JAMES DUFFIES, Plaintiff in error,

*vs.*

THE STATE OF WISCONSIN, Defendant in error.

ERROR TO RACINE CIRCUIT COURT.

The father of an illegitimate child, begotten in this State, is liable for its main-
tenance and support, although the child may be born in another State.

Where an illegitimate child was begotten in this State, and the mother went to
Illinois and resided there at the birth of the child, and continued to reside
there two years afterwards, and then returned to this State, the putative father
of the child may be proceeded against for its maintenance and support.

The several statutes in relation to a change of venue in cases before justices of
the peace, do not apply to proceedings under the bastardy act.

On an examination before the justice under the bastardy act, (the child being
over two years old,) it was held not competent to ask the mother whether, for
the last two years, she had not been an inmate of a common brothel.

Nor, on such examination, can the mother be asked whether she had ever had
sexual intercourse with any other person than the accused.

If such questions were limited to a proper time, relative to the alleged concep-
tion, the question as to intercourse with others would be pertinent and proper.

This was a proceeding under the bastardy act, wherein the
plaintiff in error was charged as the father of an illegitimate
child. The several points decided and the facts in relation
thereto, are stated in the opinion of the court.

*John W. Carey,* for the plaintiff in error.

*By the Court,* COLE, J. This was a complaint and pro-
ceeding instituted under chapter 31 of the revised statutes in
regard to the support of bastards. The testimony in the case

showed that the child was begotten in the town of Dover, in the county of Racine, and that the mother went to Illinois, and was residing in Bloomingdale, in that state, at the birth of the child, and continued to reside there until the child was two years old, when she returned to this state, and instituted this proceeding for the purpose of affiliating a bastard child, and compelling the father to aid in its support. It is now insisted by the counsel for the plaintiff in error, that the settlement of the child is in Illinois, and that this proceeding will not apply to a case when the mother was residing in another state at the time of the birth of the child. In support of this position, we have been referred to the cases of *Graham vs. Monsergh*, 22 Vt. Rep., 543; *Eggleson vs. Battles*, 26 id., 548.

The obligation of the father to support a bastard child grows out of the paternal relation existing between him and such child; and we therefore deem it quite immaterial, so far as his obligation and duty are concerned, whether the child is born out of the state or not. The object of the statute is, to save the public from the burden of supporting illegitimate children by compelling the father to provide for their maintenance. It is the father's duty to support his children, legitimate or illegitimate, and because he is likely to neglect it in the latter case, the law enforces the obligation by proceedings under bastardy acts. This is the ground upon which these statutes are founded. What difference can it make to any county or town in this state, which is about to be burdened with the support of an illegitimate pauper child, whether the child was begotten and born in such county or town or in England or Germany? If the father is within the state, where he can be held amenable to our laws, and in a town or county where the child is likely to become a charge, it is right and proper that he should support his own offspring, and the law will compel him to do so. The accident of the birth

Vol. VII. 45

place of such child ought not to be permitted to affect this general universal obligation growing out of the paternal relation. We are therefore unable to concur in the reasoning of the courts in Vermont, where it has been held that a bastard child, born out of the state, its mother at the time having no domicil in the state, cannot be affiliated, or its maintenance charged upon the father under the bastardy act.

The plaintiff in error, upon being arrested and brought before the justice before whom the complaint was made, filed an affidavit to remove the cause on account of the prejudice of the justice. This motion to remove the cause was overruled, and the magistrate proceeded to examine into the merits of the complaint, and bound the accused in a recognizance to appear at the next term of the circuit court and answer to the complaint, &c. It is now contended that the plaintiff in error was entitled to have the cause removed under the provisions of chapter 75, session laws, 1853, and section forty-six of chapter eighty-eight of the revised statutes, and that the whole proceeding before the justice in examining into the merits of the complaint and compelling him to recognize, &c., were null and void.

Chapter 75 of the session laws of 1853, in terms amends section five of chapter eighty-nine of the revised statutes. This latter chapter refers to trials before justices of the peace in criminal cases, which they have the authority to hear and determine upon the merits. But when a proceeding is instituted under chapter 31 of the revised statutes, the justice only acts as committing magistrate, and we do not think the act of 1853 was intended to apply to such a case.

Upon the trial of the cause in the circuit court, the counsel for the plaintiff in error insisted upon asking the complainant, then a witness upon the stand, whether for the last two years she had not been an inmate of a common brothel, and whether she had ever had sexual intercourse with any persons other

than the accused. The questions were objected to by the prosecution, and the objections were sustained by the court.

It is very evident that the direct tendency of these questions was to degrade the character of the witness, and they were quite impertinent to the issue being tried. That issue was as to the paternity of the child, then more than two years old, and how could it affect this issue whether the mother had been an inmate of a brothel for the past two years or not? If the inquiry as to her having had sexual intercourse with others besides the accused, had been restricted to the proper time, the question might have been permissible. But the question was whether she had *ever* had sexual intercourse with any person besides the accused, and this general question was very properly rejected.

It is believed that these remarks dispose of all the questions deemed material in the case.

The judgment of the circuit court is therefore affirmed.