CHARLES BOWDLE vs. GEORGE S. BUELL.

1. BASTARDS—BOND.

The statutes regarding bastardy were primarily designed to prevent a bastard child from becoming a charge on the state, and the bond which the law exacts from the father when paternity is established is to indemnify the state in the event of the child becoming a charge on it.

2. BASTARDS—LEGAL SETTLEMENT—NONRESIDENCE—JURISDICTION.

Under *Rev. Code* 1852, amended to 1893, *p.* 375, *c.* 48, § 12, providing that the birthplace of a person is the place of his legal settlement, where a bastard was not born in Delaware, and it did not clearly appear that the mother was a resident of the state, the bastard had no place of legal settlement in Delaware, and not being chargeable, for that reason, for its support and maintenance on any county of the state, the courts thereof had no jurisdiction of bastardy proceedings against the putative father.

(*May* 22, 1912.)

HABEAS CORPUS before Judge Conrad, on petition of Charles Bowdle, then in custody of the Sheriff of Sussex County.

*Frank M. Jones*, Deputy Attorney General, and *James M. Tunnell* for the state.

*Daniel J. Layton, Jr.*, for petitioner.

In a hearing before George M. Stengle, Justice of the Peace, in Sussex County, on complaint of the mother of a bastard child, Charles Bowdle was found to be the father of the child of the complainant and he was ordered by the Justice to give bond as provided by the statute. In default of surety he was committed to the county jail, and afterwards, upon his petition, a writ of

*habeas corpus* was issued by Henry C. Conrad, Associate Judge, commanding George S. Buell, sheriff, to produce Bowdle, the latter claiming that he was illegally detained under the commitment. Buell made return that the petitioner was in his custody as sheriff and keeper of the jail of Sussex County by virtue of a commitment issued by Justice of the Peace Stengle, etc.

After a full hearing of the evidence produced on both sides as to the residence of the mother of the child the following opinion was delivered by

CONRAD, J.:—The questions of law presented in this case have proved perplexing to me. The evidence clearly established the fact that while the mother of the bastard child was living with her grandparents in Maryland, the child was begotten in that state and also was born there. The evidence as to the residence of the mother was conflicting. The admissions of the mother made at the hearing before the justice indicated that she considered the home of her grandparents her home, and one witness testified that she reiterated several times that she lived in Maryland. The testimony of the father and grandfather of the mother of the child was not clear, but tended to show that the mother spent part of her time with her grandparents in Maryland and part with her father, who since March, 1911, has been residing in Delaware, but prior to that time had also lived in Maryland. In my effort to reconcile the conflicting testimony as to the residence of the mother, and after applying the rules of evidence applicable to conflicting evidence, I cannot rid my mind of the fact that the mother considered herself a resident of Maryland both at the time of the begetting and birth of the child.

[1] The statutes of this state regarding bastardy are primarily designed to prevent the bastard child from becoming a charge on the state, and the bond which the law exacts from the father when paternity is established is conditioned to indemnify the state in the event of the child becoming a charge on it. In the case of *James L. Smith v. State, Houst. Cr. Cas.* 107, the only bastardy case reported in this state in which the question of residence is discussed, it was held that where it clearly appeared that

the child was born in Delaware, even though the mother at the time of the begetting of the child were a resident of another state, the fact of its birth in this state brought it within the provisions of our statute (*Revised Code*, 1893, *p*. 375), which makes "the birth place of a person * * * the place of his legal settlement."

[2] The converse of this proposition must be true; if the child is not born in this state, and if it does not clearly appear that the mother was a resident of this state, it has no place of legal settlement in this state, and therefore is not chargeable for its support and maintenance on any county of this state. Our statute is designed to meet cases where the child has a legal settlement in this state, and that fact not being proven to my satisfaction in this case, the child is not chargeable for support to this state or county; and the prisoner is therefore ordered discharged.