State ex rel. v. Kirk.

STATE *ex rel.* OVERALL *v.* KIRK.

(*Jackson.*  April Term, 1915.)

BASTARDS.  Proceedings.  Jurisdiction of justice.

Shannon's Code, sec. 7332, provides that any justice of the peace upon his own knowledge, or information made to him, that any single woman within his county is delivered of a living child, may cause such woman to be brought before him for examination touching the father.  Sections 7333 and 7334, respectively, provide means for ascertaining the name of and summoning the putative father, while section 7344 recites that the proceeding is to relieve the county of the support of the child.  Section 7347 declares that the county court shall make no provision for a bastard, except when likely to become a county charge.  The mother of an illegitimate child removed from one county to another shortly after its birth.  *Held*, that a justice of the county to which she removed had jurisdiction of the proceeding to compel the putative father to support the child.

Case cited and approved:  Edmonds v. State, 24 Tenn., 95.

Case cited and distinguished:  Duffies v. Stake, 7 Wis., 672.

---

FROM GIBSON.

---

Appeal from the Circuit Court of Gibson County— THOS E. HARWOOD, Judge.

COOPER & CLARK, for the State.

WALKER & LANDRUM, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This is a bastardy proceeding, begun on the relation of Emma Overall, before a justice of the peace in Gibson county, and removed thence in orderly course to the county court and then to the circuit court of that county. Defendant Kirk was charged with being the father of an illegitimate child born to the relator in Dyer county, just across the Gibson county line, and it was averred that, when the child was eleven days old, relator removed with her father and the infant into Gibson county, where they have since resided, and where the child, it was averred, was likely to become a charge on Gibson county; the mother and the child having no property.

The circuit judge sustained a motion to dismiss the proceeding on the ground that the courts of Gibson county were without jurisdiction, for that the child was not born in that county. An appeal was prosecuted from the judgment of dimissal, and the sole error assigned challenges the correctness of that ruling.

The Code provisions relating to bastardy proceedings, which on construction are to govern our decision, are as follows:

"Sec. 7332. Any justice of the peace, upon his own knowledge, or information made to him, that any single woman within his county is delivered of a living child, may cause such woman, at any time after the expiration of thirty days from the delivery, to be brought before him to be examined on oath touching the father

"Sec. 7333. If, upon such examination, she refuses to declare the father, she shall be required to give suf-

ficient security to keep such child from being charge-able on the county, or be committed to jail until she declare the father or give the security required, or is otherwise discharged by law.

"Sec. 7334. But if she, upon oath, accuse any man of being the father of such illegitimate child, either at the examination referred to in the preceding sec-tion or upon voluntary complaint before or after the birth of the child, the justice shall issue a warrant against such person, and cause him to come before him."

"Sec. 7344. The proceedings in bastardy are con-ducted in the name of the State as plaintiff and the ac-cused as defendant, and are intended for the indem-nity of counties against the charge of supporting bastards."

"Sec. 7347. But the county court shall make no provision for a bastard, except when he is . . . likely to become a county charge."

The counsel of appellee Kirk lays stress upon that clause of section 7332 to the effect that when "any justice of the peace" has "information, . . . that any single woman within his county is delivered of a living child," as indicating that the child must be born in the county to support jurisdiction.

It is further insisted by appellee, the reputed father, that an early decision of this court (*Edmonds* v. *State*. 24 Tenn. [5 Humph.], 95) so holds. That decision, from language used, may be thought to be subject to that construction, but we are persuaded that such is

not the true construction of the opinion in that case. The affidavit of the mother in that case disclosed "only the fact that Joel Edmonds was the father of a bastard child, of which she was delivered on the 6th day of February, 1840," and it appeared that "it is stated in no part of the proceedings that the child was born in the county of Jefferson, or that the county is legally chargeable with its support." The court, after quoting from the old English statute of 18 Elizabeth in relation to bastardy proceedings, said:

"Now, under this statute, the order of the county court of the county comes in place of the order of the two justices under the statute of Elizabeth, and the same certainty must be required in the one that has been adjudged to be required in the other. We have seen that under the statute of Elizabeth the place of the birth must be set forth in the order made by the justices; so it must be in the order made in the county court, and for the same reasons, viz., that it may appear that the county court had jurisdiction, and that the child was born in the county to which the relief was ordered."

In the ordinary case the child is resident where born, and the place of birth was treated, as we construe the decision, as the place where the child was and where it was likely to become a charge on the county.

In this case, we cannot hold that the courts of Gibson county are without jurisdiction merely because the child was born across the Dyer county line.

The rule in other jurisdictions is that the place of

birth of the child is in such proceedings held to be immaterial.  5 Cyc., 645.

By the terms of section 7334, the proceeding may be commenced before the birth of the child.  Assume that the mother had removed to Gibson county before the birth of the child, after beginning a proceeding in Dyer county, would that proceeding be ousted by the fact that the birth occurred in Gibson county?

Assume that the mother had been at all times a resident of Gibson county, and that, in order to hide her shame temporarily, she had gone into Shelby county for her lying-in, after which she had returned with her child to Gibson county.  Can it be maintained that the courts of the latter county are without jurisdiction to protect that county against the expense of the support of the child?  Must that county be forced to borrow and use the judicial machinery of Shelby county, and work out its protection at the expense in so far of Shelby county?  Must Gibson county in such a case take only such measure of security as the county court of another and distant county may, without due facilities to ascertain what is needed, award?  What concern would the county court of Shelby county have for the ample protection of Gibson county?

It has been noted that, by the express terms of section 7344, the proceeding is one in behalf of the county and intended for the county's indemnity touching the support of the child.

Assume that the woman, instead of going, for the purpose indicated, into another county of this State,

should go into another State and return with the child following its birth to the county of her residence. Can it be that, merely because the child was born in another State, the courts of this State are deprived of jurisdiction; and that the county of this State about to be burdened with the maintenance of the child is remediless? We must withhold assent to any doctrine which would lead to such results.

In the case before us, the mother and the child are in Gibson county as residents; and the record by fair inference shows the putative father to reside in that county. But, whether this be true or not, the county of Gibson as the beneficiary party, so designated by statute, as a corporate entity is there. Why should the courts of that county be held useless in respect of the matter of awarding relief?

As was well said by the supreme court of Wisconsin in *Duffies* v. *State,* 7 Wis., 672.

"What difference can it make to any county or town in this State, which is about to be burdened with the support of an illegitimate pauper child, whether the child were begotten and born in such county or town or in England or Germany? If the father is within the State, where he can be made amenable to our laws, and in a town or county where the child is likely to become a charge, it is right and proper that he should support his own offspring, and the law will compel him to do so."

We hold the ruling of the trial judge to have been erroneous. Reversed and remanded for trial.