STATE EX REL. REYNOLDS, Plaintiff in error, vs. FLYNN, De-
fendant in error.

*April 7—May 1, 1923.*

*Bastards: Proceeding by nonresident female: By married woman:
Habeas corpus: Nature and form of writ: Motion to dis-
charge: Effect: Witnesses: Competency: Husband or wife:
Testimony bastardizing child born during wedlock: Waiver of
incompetency: Cross-examination of witness.*

1. A nonresident female may prosecute a statutory action for bas-
tardy against a resident of the state.
2. A married woman may prosecute a bastardy proceeding, the
statute expressly providing that any female may make com-
plaint.
3. While one may waive his right to raise the question as to
whether a court has jurisdiction of the person, the rule is
otherwise where it relates to the power or authority of the
court to proceed.
4. While the examining magistrate had jurisdiction of bastardy
proceedings he had no jurisdiction to bind a defendant over
for trial unless there was sufficient competent evidence to
sustain a finding that there was probable cause to believe
that defendant was the father of the child.
5. *Habeas corpus* is a civil action in which the state, on the re-
lation of the petitioner, is plaintiff, and the person charged

State ex rel. Reynolds v. Flynn, 180 Wis. 556.

with unlawfully imprisoning and restraining the prisoner is at least one of the defendants.

6. Under sec. 3410, Stats., relating to *habeas corpus,* a petition stating that the court which directed the imprisonment of defendant in bastardy proceedings under sec. 1530 had no jurisdiction, in that complainant and her child have not been, and were not at the time of defendant's arrest and restraint, residents of the state, and that complainant is a married woman, is sufficient to require the sheriff to produce the body of defendant before the court with the reason for the time and cause of his imprisonment.

7. Where a sheriff made his return to a writ of *habeas corpus* and defendant challenged it by motion to discharge, the question stood upon the sufficiency of the return.

8. Sec. 3410, Stats., requires the grounds of illegality of imprisonment to be stated so as to prevent the improvident issuance of the writ of *habeas corpus,* and so that, in the first instance, the sufficiency of the petition may be challenged by a motion to quash or by demurrer.

9. The primary purpose for which the writ of *habeas corpus* is granted is to inquire into the legality of the imprisonment of a citizen, and when from the return it appears that the petitioner is illegally restrained the court has power to grant relief, though the particular grounds of illegality appearing upon the face of the return were not alleged in the petition for the writ.

10. The rule that a child born of a married woman is in the first instance presumed legitimate applies also where the conception took place prior to marriage.

11. The failure to object to the competency of a witness is a waiver, and when the testimony of an incompetent witness has been received without objection it stands in the case as does that of any other witness.

12. The ground of public policy upon which the rule presuming the legitimacy of a child of a married woman born in wedlock is based does not prevent the bastardization of the issue born in lawful wedlock, but prevents the husband and wife from testifying to the fact of non-access.

13. Where defendant not only failed to object to the competency of complainant as a witness but cross-examined her in relation to facts from which non-access might be inferred, he made the complaining witness, upon matters not brought out in examination in chief, his own witness and waived her incompetency to testify.

ESCHWEILER, J., dissents. OWEN, J., dissents in part.

ERROR to review an order of the circuit court for Oconto county: W. B. QUINLAN, Circuit Judge.   *Reversed.*

*Habeas corpus.*   The defendant was arrested upon the complaint of Clarissa Beardsley, charging him with being the father of her child born June 27, 1922.   It appears from the evidence taken at the preliminary examination that the complainant was a girl eighteen years of age at the time of the alleged intercourse, residing in the county of Oconto; that the child was conceived some time in the month of September or October, 1921; that thereafter and on the 8th day of January, 1922, the complainant went to the city of Chicago, Illinois, for the purpose of making it her permanent residence; that on January 14, 1922, she was married to Lawrence Beardsley, who went to Chicago in August, 1922; that on or about the 27th day of June, 1922, Beardsley deserted her. She testified that she had never had intercourse with Beardsley prior to her marriage to him.   It further appears that at the time of the preliminary examination she intended to return to the city of Chicago, her permanent home.

No action of divorce has been begun nor is contemplated. The complainant returned to the state of Wisconsin for the express purpose of prosecuting this proceeding.   Upon the preliminary examination the magistrate held that there was probable cause to believe the accused guilty and bound him over to the next term of the circuit court for Oconto county, and caused him to be committed to the county jail of that county pending trial.   A writ of *habeas corpus* was sued out in his behalf, and at the hearing thereon the court discharged the defendant from custody.   This writ is prosecuted on behalf of the state of Wisconsin to review the proceeding so had.

For the plaintiff in error there were briefs by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *Irving Breakstone,* district attorney of Oconto county, at-

torneys, and *Fairchild, North, Parker & Bie* and *Samuel D. Hastings* of Green Bay, of counsel, and oral argument by *Mr. Breakstone*.

For the defendant in error there was a brief by *Classon & O'Kelliher* of Oconto, and oral argument by *Mr. V. J. O'Kelliher*.

ROSENBERRY, J. Three questions are presented for consideration here: (1) May a nonresident prosecute a statutory action for bastardy against a resident of this state? (2) Can a married woman prosecute the action under our statute? (3) Was the magistrate without jurisdiction to hold the defendant for trial, there being no evidence before him except that given by the complainant, it appearing that the complainant was at the time of the examination and now is a married woman, and that the child was born in wedlock?

Upon the first proposition there is a considerable conflict of authority due to the wording of the various statutes of the jurisdictions in which the question has been determined, and also to the view the courts of the several jurisdictions take of the nature and purpose of the proceeding. Where the courts adhere to the view that the proceeding is one designed primarily to relieve the public of the probable burden of supporting a bastard child and that it is prosecuted mainly in the public interest, it is held that the action may not be prosecuted by a nonresident. *Sutfin v. People,* 43 Mich. 37, 4 N. W. 509; *Bowdle v. Buell,* 3 Boyce (26 Del.) 347, 83 Atl. 1084; *Graham v. Monsergh,* 22 Vt. 543; *Richardson v. Burlington,* 33 N. J. Law, 190.

On the other hand, where the courts take the view that the proceeding is primarily to compel the father to aid the mother in supporting the child and so as to enforce the father's natural obligation, it is held that the action may be prosecuted by a nonresident. *McGary v. Bevington,* 41

Ohio St. 280; *Comm. v. Dornes,* 239 Mass. 592, 132 N. E. 363; *Roy v. Poulin,* 105 Me. 411, 74 Atl. 923; *State v. Etter,* 110 Minn. 258, 124 N. W. 957; *Moore v. State,* 47 Kan. 772, 28 Pac. 1072; *Kolbe v. People,* 85 Ill. 336.

In *Duffies v. State,* 7 Wis. 672, this court had under consideration the nature of the proceeding under our statute and whether or not it could be maintained where the child was born without the state. It appeared in that case that the child was conceived in this state, born in the state of Illinois, where the mother remained for two years after its birth, and the proceeding was instituted after she returned. The court said:

"The obligation of the father to support a bastard child grows out of the paternal relation existing between him and such child; and we therefore deem it quite immaterial, so far as his obligation and duty are concerned, whether the child is born out of the state or not. The object of the statute is to save the public from the burden of supporting illegitimate children by compelling the father to provide for their maintenance. . . . The accident of the birth place of such child ought not to be permitted to affect this general universal obligation growing out of the paternal relation. We are therefore unable to concur in the reasoning of the courts in Vermont, where it has been held that a bastard child, born out of the state, its mother at the time having no domicile in the state, cannot be affiliated, or its maintenance charged upon the father under the bastardy act."

In a later case this court said:

"A bastardy proceeding has been held to be neither a civil nor a criminal action, but one depending wholly upon the terms of the statute authorizing it for the relief that may be afforded thereby. . . . It has also been held that when instituted by the mother it is a proceeding for her benefit and protection to enforce the father's natural obligation to support his child. *Baker v. State,* 56 Wis. 568, 14 N. W. 718; *Barry v. Niessen,* 114 Wis. 256, 90 N. W. 166. So we see that whether the defendant's liability is founded upon a tort or upon a natural obligation, irrespective of blame, it is

a liability primarily to the mother and the remedy is given for her benefit. True, the state is remotely interested, for if the father does not furnish support it may be called upon to do so." *Smith v. State,* 146 Wis. 111, 130 N. W. 894.

Were the court not already committed to the proposition that the action may be maintained by a nonresident, we should be obliged to so hold because of the nature of the proceeding under our statute as indicated in *Smith v. State, supra.* Such also is the weight of authority.

## II.

By sec. 1530, Stats., it is provided:

"On complaint being made to any justice of the peace by any female who shall be delivered of a bastard child or who shall be pregnant with a child which, if born alive, may be a bastard, accusing any person of being the father of such child the justice shall take such complaint in writing, under the oath of such female, and shall thereupon issue his warrant against the person accused, directed to the sheriff or any constable of his county, commanding him forthwith to bring such accused person before the justice to answer such complaint."

The question of whether or not a married woman can prosecute the action would seem to be settled by *Duffies v. State,* 7 Wis. 672, and *Mink v. State,* 60 Wis. 583, 19 N. W. 445. In each of those cases the prosecutrix was a married woman at the time the affiliation proceedings were instituted. The language of our statute would scarcely permit of any other holding, it being expressly provided that *any female* may make the complaint. There are holdings to the contrary in other jurisdictions based upon the peculiar wording of the statutes in those jurisdictions.

## III.

It is contended by the defendant that the magistrate had no jurisdiction to hold him for trial for the reason that there

was no competent evidence offered or received upon the trial to establish the allegations of the complaint. . The prosecutrix was sworn upon the preliminary examination, and if she is a competent witness to the facts testified to by her there is ample evidence to sustain the finding and order of the magistrate. On behalf of the state it is urged that this question was not raised below and that the defendant cannot raise it in this court for the first time.

While a person may waive his right to raise the question as to whether or not the court has jurisdiction of the person, the rule is otherwise where it relates to the power or authority of the court to proceed. While the court here had jurisdiction of the statutory proceeding, it had no jurisdiction to bind the defendant over for trial—there being no waiver of the right to a preliminary examination,—unless there was sufficient competent credible evidence to sustain the finding that there was probable cause to believe that the defendant was the father of the child. *State ex rel. Durner v. Huegin,* 110 Wis. 189, 237, 85 N. W. 1046.

The writ of *habeas corpus* issued in this case, and the relator here, *J. W. Reynolds,* sheriff of Oconto county, in whose custody the defendant then was, made his return to the writ. The record here does not show what proceedings were had upon the return or how its sufficiency was challenged. Apparently there was no traverse, and we assume that the matter was considered as if the petitioner had stood upon the return and moved for his discharge, thus challenging the sufficiency of the return. *State ex rel. Hellige v. Milwaukee Liedertafel,* 166 Wis. 277, 164 N. W. 1004.

The relator here asserts that, the petition for the writ not having alleged that the magistrate was without jurisdiction because of the fact that there was no evidence before him upon which the finding could be based, no inquiry can be had as to the sufficiency of the return for that reason.

The nature of *habeas corpus* proceedings was fully dis-

cussed and settled in the case of *State ex rel. Durner v. Huegin,* 110 Wis. 189, 85 N. W. 1046. It is a civil action in which the state, on the relation of the petitioner, is plaintiff, and the person charged with unlawfully imprisoning and restraining the petitioner is at least one of the defendants.

In *In re Falvey,* 7 Wis. 630, it was said:

"Upon principle it would seem to be clear that when this court issued the writ of *habeas corpus* to inquire into the cause of the imprisonment of a citizen of the state, it must from necessity have the right further to inquire into the matter, and determine whether the committing body or magistrate had jurisdiction or not. Otherwise the issuing the writ would be an idle ceremony, and really to no purpose."

The statute, sec. 3410, provides that "If the imprisonment be alleged to be illegal, the petition must also state in what the alleged illegality consists." .

The petition in this case contains the following allegation:

"That the court which directed his imprisonment and restraint has and had no jurisdiction in that the complainant and the child of the complainant has not been, was not at the time of the arrest and at the time of the imprisonment and restraint, residents of the state of Wisconsin and the complainant is a married woman."

The petition was sufficient to require the respondent in the *habeas corpus* proceedings—the relator here—to produce the body of the defendant before the court with the reasons for the time and cause of his imprisonment. The sheriff having made his return and the sufficiency thereof having been challenged by a motion to discharge, the question stood upon the sufficiency of the return. The statute requires the grounds of illegality of imprisonment to be stated so as to prevent the improvident issuance of the writ and so that in the first instance, if the respondent chooses to do so, the sufficiency of the petition may be challenged by a motion to quash or by demurrer. While it is said that a *habeas corpus*

proceeding is an action, it must be borne in mind that the primary purpose for which the writ is granted is to inquire into the legality of the imprisonment of a citizen, and when from the return it appears that the petitioner is unlawfully or illegally restrained, the court has full power to grant relief although the particular grounds of illegality appearing upon the face of the return were not set forth in the petition.

"The writ of *habeas corpus* is a 'writ of right,' and its beneficent effects ought not to be dissipated by subtle objections and technical niceties, and the technical rules of pleading are not applicable in such a proceeding." *Mathews v. Swatts,* 16 Ga. App. 208, 84 S. E. 980; *Wilkinson v. Lee,* 138 Ga. 360, 365, 75 S. E. 477, 42 L. R. A. N. s. 1013.

The rule laid down by Lord MANSFIELD in *Goodright v. Moss,* 2 Cowp. 591 (1777), that "The law of England is clear that the declarations of a father or mother cannot be admitted to bastardize the issue born after marriage," has been accepted in its entirety in this state. In *Mink v. State,* 60 Wis. 583, 19 N. W. 445, it was said:

"Testimony of the wife even *tending* to show such fact, or of any fact from which such non-access could be *inferred,* or of any collateral fact connected with this main fact, is to be most scrupulously kept out of the case; and such non-access and illegitimacy must be clearly proved by other testimony." *Watts v. Owens,* 62 Wis. 512, 22 N. W. 720; *Shuman v. Shuman,* 83 Wis. 250, 53 N. W. 455.

And the rule applies where the conception took place prior to the marriage. *Westfall v. Westfall,* 100 Oreg. 224, 197 Pac. 271, 13 A. L. R. 1428; *Wallace v. Wallace,* 137 Iowa, 37, 114 N. W. 527, 14 L. R. A. N. s. 544; *Rabeke v. Baer,* 115 Mich. 328, 73 N. W. 242. See generally, *Evans v. State,* 165 Ind. 369, 74 N. E. 244, 2 L. R. A. N. s. 619; note in 126 Am. St. Rep. 253, 267, at p. 272.

This rule, by virtue of which those having the most intimate knowledge in regard to the facts to be established are held to be incompetent witnesses, has been very severely

criticised. 3 Wigmore, Evidence, §§ 2063, 2064; Hooper, Law of Illegitimacy, pp. 202, 217.

It was originally the rule at common law that the child of a married woman was conclusively presumed to be legitimate if begotten while her husband was within the four seas— that is, within the jurisdiction of the kingdom of England— unless the husband was impotent. 2 Coke on Littleton, 244a. This rigorous rule was gradually relaxed by judicial decisions in later times. The modern rule laid down by Lord LANGDALE in *Hargrave v. Hargrave,* 9 Beav. 552, has been expressly accepted by this court in *Shuman v. Shuman,* 83 Wis. 250, 53 N. W. 455. It is as follows:

"A child born of a married woman is, in the first instance, presumed to be legitimate. The presumption thus established by law is not to be rebutted by circumstances which only create doubt and suspicion, but it may be wholly removed by proper and sufficient evidence, showing that the husband was (1) incompetent; (2) entirely absent, so as to have no intercourse or communication of any kind with the mother; (3) entirely absent at the period during which the child must, in the course of nature, have been begotten; or (4) only present under such circumstances as afford clear and satisfactory proof that there was no sexual intercourse. Such evidence as this puts an end to the question, and establishes the illegitimacy of the child of a married woman."

The matter of the admissibility and sufficiency of evidence to prove the illegitimacy of a child born in wedlock is fully and exhaustively treated in a note appended to *Wallace v. Wallace* (137 Iowa, 37, 114 N. W. 527) 126 Am. St. Rep. 253, 260, and cases there cited.

Had there been any objection to the competency of the witness to testify as to the fact of non-access or her testimony as to facts from which non-access might be inferred, the objection should have been sustained and there would be no evidence in this case to overcome the very strong presumption of the legitimacy of a child born in wedlock. But in this case the defendant not only failed to object to the com-

petency of the witness but at great length cross-examined the complaining witness in relation to facts from which non-access might be inferred and elicited from her full and complete testimony in this respect.

The general rule is that the failure to object to the competency of a witness is a waiver, and when the testimony of an incompetent witness has been received without objection it stands in the case as does that of any other witness. *Byrnes v. Clark,* 57 Wis. 13, 14 N. W. 815; *Donelson v. Taylor,* 8 Pick. 390; 30 Am. & Eng. Ency. of Law (2d ed.) 970.

It is quite plain that the competency in question in this case is the competency of the witness and not of the evidence given by the witness. It is clearly and affirmatively stated in *Shuman v. Shuman, supra,* that the fact of non-access may be established by proper evidence. The ground of public policy upon which the rule is said to be based does not prevent the bastardization of the issue born in lawful wedlock, but prevents the husband or wife from testifying to the fact of non-access.

We see no reason why the general rule should not be applicable in this as in other cases where the witness is incompetent by reason of interest, incapacity, or other like reason. The rule formerly required that the objection to the competency must be taken before the witness was sworn, but has been gradually relaxed. The reason for the rule has been stated as follows:

"Where a witness's incompetency is discovered accidentally in the course of his examination, he may, I think, with propriety be objected to when the discovery is made; but where it is known to the opposing counsel from the commencement of his examination, I think he ought not to be allowed to lie by and take the chance of the evidence being in his favor, and when he finds it to be unfavorable to him, then to take the objection." *Jacobs v. Layborn,* 11 Mees. & W. 685.

State ex rel. Reynolds v. Flynn, 180 Wis. 556.

In this case the facts are such as to indicate that the fact of non-access might have been readily established by other witnesses. It appears that Beardsley, the husband, left Oconto county in August, did not return to that county prior to his marriage to the complaining witness in Chicago on January 8, 1922, and that during the interim the complaining witness remained in Oconto county. Had the question as to the competency of the witness been raised at the preliminary examination, no doubt the proof would have been supplied. The rule is particularly applicable in this case where the facts were elicited mainly upon cross-examination. When the defendant cross-examined the complaining witness upon matters not brought out in her examination in chief, he made the complaining witness his own, and the authorities are unanimous in holding that, where a party calls as his own a witness incompetent to testify, the incompetency is thereby waived.

*By the Court.*—The order of the circuit court for Oconto county discharging the defendant from custody is reversed, and the cause is remanded for further proceedings according to law.

ESCHWEILER, J., dissents.

OWEN, J. (*dissenting in part*). The reason underlying the rule prohibiting a married woman from testifying to the non-access of her husband at or about the time of conception for the purpose of bastardizing her child is somewhat hazy, as a perusal of the authorities referred to in the opinion will disclose. There seems an incongruity in permitting her to testify to intercourse with a strange man but prohibiting her from testifying to the non-access of her husband. But whatever may be the reason for the rule, whether it rests upon considerations of public policy, public morals, or exists for the benefit of the child, certain it is that it is

not for the benefit or protection of the alleged father of the child, and I cannot agree that in a case of this kind he who is accused by a married woman of being the father of her child can waive her incompetency to testify to the non-access of her husband. Whatever may be said of the wisdom of the rule, it seems to be firmly intrenched in the jurisprudence of this country, and has been accorded most emphatic approval by this court. While it is difficult to answer Professor Wigmore's caustic criticism of the rule, it probably should not be disturbed by this court. However, it is quite clear to my mind that the reason supporting the rule is inconsistent with the right or power on the part of one accused of being the father of a married woman's alleged bastard child to waive the rule. The rule is either for the benefit of society or for the benefit of the child, and the considerations which prohibit the mother from testifying to the non-access of the husband equally deny to the alleged father the power to break the seal which the law has placed upon the mother's lips by waiving her incompetency.

I therefore dissent from so much of the opinion as holds that the testimony of the mother to the non-access of her husband is legitimately in the case because of the failure of the defendant to object.