J.V., a minor, by his Guardian ad Litem, Jonathan B. Levine, Plaintiff-Appellant,†

v.

Honorable Michael J. BARRON, Defendant-Respondent.

Supreme Court

*No. 82-542.  Argued March 2, 1983.—Decided April 26, 1983.*

(Also reported in 332 N.W.2d 796.)

† Motion for reconsideration denied, without costs, June 1, 1983.

For the plaintiff-appellant there was a brief by *Jonathan B. Levine* and *Kahn & Levine,* Milwaukee, and oral argument by *Jonathan B. Levine.*

The cause was argued by *Charles D. Hoornstra,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

STEINMETZ, J.   The issue in this case is whether a circuit court judge may refuse on the basis of comity to sign a writ of habeas corpus in a child custody dispute.

On April 24, 1980, the Honorable William D. Gardner ordered J.V., a two and one-half year old minor at the

time, placed into foster care custody pursuant to sec. 48.19(1)(c), Stats.[1] The emergency order was based upon allegations that J.V. was a victim of child abuse.[2]

[1] Sec. 48.19(1)(c), Stats., provides:

"48.19 Taking a child into custody. (1) A child may be taken into custody under:

". . . .

"(c) An order of the judge if made upon a showing satisfactory to the judge that the welfare of the child demands that the child be immediately removed from his or her present custody. The order shall specify that the child be held in custody under s. 48.207; or [48.19(d)]."

[2] The petition alleging J.V. to be in need of protection or services alleged that J.V.'s mother:

"[N]eglects, refuses or is unable for reasons other than poverty to provide necessary care, food, clothing, medical or dental care or shelter so as to seriously endanger the physical health of the child pursuant to Wis. Stats. s. 48.13(10) in the following manner:

"A. The above named child's mother, . . . has been living with friends and relatives and has no permanent address at this time;

"B. On several occasions, [the mother] has left [J.V.] unsupervised, the last incident was on October 12, 1979, [October 7, 1979] when he and his two cousins, ages two months and one year, were found alone asleep on a filthy mattress in a closet at 12:30 A.M.; as a result, [the mother] and her sister, Beverly, were charged with child neglect in criminal court and put on probation for one year; further, since this incident [J.V.] has not lived with [the mother]; from October 12, 1979, to December, 1979, [J.V.] lived in the home of a relative until this relative could no longer adequately care for him;

"C. Since December, 1979, [J.V.] has been living with [the mother's] half-sister, Alice Jolly; Ms. Jolly's home has been licensed to care for him and the Department of Social Services is making foster home payments to Ms. Jolly; further, [the mother] has signed a voluntary placement agreement with the Department of Social Services authorizing said child's placement in substitute care;

"D. [The mother's] visits with said child have been erratic; she has visited him as often as three times in one week but then has had no contact with him for weeks;

"E. [The mother] has not expressed or exhibited an ability to adequately meet said child's physical needs; if [J.V.] were returned to [the mother] at this time, his physical needs would be endangered."

It appears from the record and oral argument that J.V. had not actually been residing with his mother since October 12, 1979. The record does not indicate why the emergency order was sought six months later. Judge Gardner scheduled a hearing before a court commissioner to further consider the custody change, if it was a change, for April 28 at the children's court center.

On April 25, 1980, J.V.'s mother petitioned the defendant, the Honorable Michael J. Barron, to issue a writ of habeas corpus. Judge Barron refused to sign the accompanying order granting the writ of habeas corpus for reasons of comity.

Subsequently, this action for $1,000 in statutory damages against Judge Barron was instituted pursuant to sec. 292.09, Stats. (1977),[3] for refusing to sign the writ of habeas corpus. J.V. alleged that comity is an improper ground for refusing to grant a writ. The matter was submitted to the Honorable W.L. Jackman and on cross motions for summary judgment, he ruled in favor of Judge Barron. We accepted certification of this case from the court of appeals.[4]

Petitioning for a writ of habeas corpus is a right granted by the United States and Wisconsin Constitu-

[3] The statute in effect at the time the action was filed read as follows:

"If any judge shall wilfully refuse to grant such writ, when legally applied for, he shall be liable to the prisoner in the sum of one thousand dollars."

The legislature amended the statute by ch. 176, Laws of 1979, sec. 139. The statute now reads: "Any judge who refuses to grant a writ of habeas corpus, when legally applied for, is liable to the prisoner in the sum of $1,000." Sec. 782.09, Stats.

[4] Two days after oral argument, without prompting, this court received from the plaintiff two documents concerning the current procedure in Milwaukee county when one circuit court branch is presented with a writ of habeas corpus where one of the defendants is another circuit court judge. The documents were not considered by the court when arriving at its decision.

tions[5] and Wisconsin Statutes, ch. 782. The roots of the writ can be traced deep into English common law and "indisputably holds an honored position in our jurisprudence." *Engle v. Isaac,* 456 U.S. 107, 126 (1982). Its special function is to protect and vindicate a person's right of personal liberty by freeing him from illegal restraint. The writ is frequently used in prisoner cases, but it is also used in child custody cases, treating the removal of a child from lawful custody as an illegal restraint.

Although the petitioner has a right to the writ, judges are not bound to issue the writ as a matter of course, but only upon cause shown. Thus, the petitioner presents the petition for the writ to a judge who examines it and grants or refuses the writ.

In many child custody disputes, there is no underlying court order or judgment regarding the custody of the child. In those types of cases, the petitioner alleges a legal right to the custody of the child usually because of natural parenthood. If the writ is granted, the habeas court holds a hearing to decide whether there is in fact

---

[5] Art. I, sec. 9 of the United States Constitution provides in part:

"The privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it."

Art. I, sec. 8 of the Wisconsin Constitution provides in part:

"**Prosecutions; double jeopardy; self-incrimination; bail; habeas corpus.** SECTION 8. . . . .

"(4) The privilege of the writ of habeas corpus shall not be suspended unless, in cases of rebellion or invasion, the public safety requires it."

Art. VII, sec. 8 of the Wisconsin Constitution provides:

"**Circuit court: jurisdiction.** SECTION 8. [*As amended April 1977*] Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state and such appellate jurisdiction in the circuit as the legislature may prescribe by law. The circuit court may issue all writs necessary in aid of its jurisdiction."

an illegal restraint. If an unlawful restraint is found then the court makes a custody determination focusing on the welfare of the child. *See State ex rel. Tuttle v. Hanson*, 274 Wis. 423, 80 N.W.2d 387 (1957). *See generally* Oaks, *Habeas Corpus in the States—1776–1865*, 32 U. Chi. L. Rev. 243, 270–74 (1965).

When there is an underlying court order, as in this case, the writ does not take the place of a writ of error to determine the merits of an order in issue. Since the court issuing the underlying order has presumably already considered the best interests of the child in its custody determination, relitigation of the child's interest is not appropriate on habeas corpus. Instead, when habeas corpus relief is sought to release a child confined under a court order, the habeas court determines only whether the order is void because the court issuing the order lacked jurisdiction to do so, the order was made in violation of the constitution, or there was a lack of legal authority for the order. *Wolke v. Fleming*, 24 Wis. 2d 606, 613–14, 129 N.W.2d 841 (1964), *cert. denied*, 380 U.S. 912 (1965).

In this case, J.V.'s mother presented a petition for a writ of habeas corpus to Judge Barron, averring that such confinement of J.V. was "contrary to law." Had Judge Barron granted the writ, J.V. would not have been entitled to immediate release from custody ordered by Judge Gardner. By granting the writ, Judge Barron would have directed the person who had custody of J.V. to produce J.V. and to appear at a hearing at which the legality of Judge Gardner's order would have been litigated. If the order was illegal, then Judge Barron would have remanded custody of J.V. back to his custodian before Judge Gardner's order or determine who should have custody of J.V. until a final hearing before Judge Gardner. Thus, J.V. could not have been released from

the ordered custody until hearings were held after the writ was granted. *State ex rel. Terry v. Schubert,* 74 Wis. 2d 487, 491–92, 247 N.W.2d 109 (1976), *vacated on other grounds,* 434 U.S. 808 (1977); *State ex rel. Durner v. Huegin,* 110 Wis. 189, 236–37, 85 N.W. 1046 (1901); *State ex rel. Dunn v. Noyes,* 87 Wis. 340, 343, 58 N.W. 386 (1894); *Petition of Crandall for a Habeas Corpus,* 34 Wis. 177, 179 (1874).

The record in this case, though sparse, indicates that Judge Barron did not refer to the petition presented to him nor consider whether the court ordering the restraint of J.V. had jurisdiction and was acting constitutionally. When Judge Barron refused to sign the writ he explained:

"The reason for not signing this is that the Court has serious doubts as to whether one Circuit Court ought to be reviewing the order of a court of equal jurisdiction; that is, the Hon. William Gardner.

". . . .

"I realize that there is a statutory and constitutional right to a Writ of Habeas Corpus, but I believe that as a matter of comity one judge should not be reviewing the order of another judge and that if same is to be done it should be done by the Wisconsin Court of Appeals."

When Judge Barron was deposed for this action, he testified in part:

"A. About three years ago, actually July of 1977, when I was presented with a writ of habeas corpus application for an alternative writ in the matter of State ex rel Burlyn Porter v. Wolke, I expressed some reservations as to whether or not a Circuit Judge had jurisdiction to even sign an alternative writ, let alone a peremptory one, regarding a challenge to an order issued by a brother Circuit Judge. However, I resolved the doubt in favor of exercising jurisdiction, and when the hearing came up for the question as to whether a preemptory writ ought to be issued, I denied the preemptory writ on the merits in order to have the matter resolved; on the merits as opposed to deciding the question of

jurisdiction. Later when that case was appealed to the Wisconsin Supreme Court, apparently the respondents in the case did not challenge my jurisdiction to hear the writ but rather did as I did, argued the matter before the Wisconsin Supreme Court on the merits. When the Supreme Court issued its opinion they affirmed my denial of the preemptory writ but in the decision raised the issue as to whether one Circuit Judge had jurisdiction to hear a challenge to an order by a fellow Circuit Judge. On the basis of that case, I decided that it would be beneficial for the bench and bar to have the issue decided on the merits. So that I, in effect, created a test case by my refusal to sign the alternative writ in what is denominated Exhibit No. 2 in this deposition.

"...

"A. Each judge has to make up his own decision in his own mind on a judicial matter that appears before him. Now, whether there is a policy, if you want to call it that, among judges in Milwaukee County is really irrelevant because no judge can tell another judge as to how he should rule; other than, obviously, an appellate court judge.

"...

"A. I have some serious questions and doubts in my mind as to whether I have jurisdiction to grant an alternative writ, let alone a preemptory one, when the petition for the writ is based on a challenge to an order issued by a Circuit Court Judge of equal jurisdiction."

The term comity as used by Judge Barron refers to a concept of courtesy; complaisance; respect; a willingness to grant a privilege, not as a matter of right, but out of deference and good will.[6] The United States Supreme Court has stated:

"Comity is not a rule of law, but one of practice, convenience and expediency. It is something more than mere courtesy, which implies only deference to the opinion of others, since it has a substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question. But its obligation is not

[6] Black's Law Dictionary 242 (rev. 5th ed. 1979).

imperative. . . . Comity persuades; but it does not command. It declares not how a case shall be decided, but how it may with propriety be decided. . . . It demands of no one that he shall abdicate his individual judgment, but only that deference shall be paid to the judgments of other coordinate tribunals." *Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 488–89 (1900).

As applied to this case, it is apparent that Judge Barron wanted to avoid any appearance of second-guessing a fellow circuit court judge's decision.

This record demonstrates that Judge Barron, with the encouragement of other circuit judges, sought to create a test case to determine whether comity was a valid reason to refuse to grant writs of habeas corpus. We conclude that in situations such as this where the habeas court is asked to only examine another judge's order for constitutional and jurisdictional defects and not to reconsider the merits of that order, comity is an impermissible justification to refuse to sign the writ. The habeas petition did not ask Judge Barron to examine the merits of the custody order, but rather its legality.

When one alleges that he or she is being unlawfully restrained, notions of comity should not interfere with that person's right to a swift determination of the legality of the detention. A person's right to liberty is paramount to a judge's concern for comity. This is especially so in this case since Judge Barron was not being asked to review the merits of another judge's decision, but rather only to determine whether the order was constitutionally or jurisdictionally defective.

Judge Barron argues in this appeal that had he examined the habeas petition, J.V. was entitled to no relief, hence he was under no duty to sign the writ. We read the petition as showing two possible jurisdictional defects in Judge Gardner's proceedings and therefore reject Judge Barron's contention.

First, the petition alleged that Judge Gardner relied on six-month-old, improper and unconvincing information for his order. This allegation raises the possibility of a jurisdictional defect for issuing an emergency order. Although ordinarily the sufficiency of evidence supporting an order of a circuit court is not a jurisdictional defect, but is an allegation of error not properly reviewed by habeas corpus, there is a category of cases in which sufficiency or competency of evidence is considered a jurisdictional defect. This class of cases consists of those where a petitioner tests the sufficiency of evidence to support a finding of probable cause and a bindover determination made at a preliminary hearing, sec. 970.03(7), Stats.,[7] or tests the sufficiency of a complaint. A habeas court may review the bindover or complaint determination while the criminal charges against the accused are still pending. *In re Wis. Family Counseling Services v. State,* 95 Wis. 2d 670, 676, n. 7, 291 N.W.2d 631 (Ct. App. 1980); *Wolke v. Fleming,* 24 Wis. 2d 606, 614–15, 129 N.W.2d 841 (1964), *cert. denied* 380 U.S. 912; *State ex rel. Reynolds v. Flynn,* 180 Wis. 556, 562, 193 N.W. 651 (1923); *State ex rel. Durner v. Huegin,* 110 Wis. 189, 237–39, 85 N.W. 1046 (1901).

Sec. 48.19(3), Stats., provides that "Taking into custody is not an arrest except for the purpose of determining whether the taking into custody or the obtaining of any evidence is lawful." It appears that this statute provides for a type of judicial investigation similar to the judicial function exercised at a preliminary examination in a criminal case. Thus, the allegation that the judge did not act on sufficient evidence may be a jurisdictional defect in this case.

---

[7] Sec. 970.03(7), Stats., provides:

"If the court finds probable cause to believe that a felony has been committed by the defendant, it shall bind the defendant over for trial."

There is another allegation of a possible jurisdictional defect or illegality in Judge Gardner's order. The order which removed or kept J.V. from his mother's custody and caused his restraint of liberty on Thursday, April 24, did not provide for a hearing on the merits of the matter until the following Monday. This is in apparent violation of J.V.'s statutory right to have a hearing within 24 hours of the order taking him into custody. Sec. 48.21(1)(a), Stats.[8] Although J.V. did not raise this issue until oral argument before this court, Judge Barron would have been aware of the issue and sec. 48.21 (1)(a), had he considered the habeas corpus petition and the statutes to which the petition refers.

We cannot conclude, based on the record before this court, that these defects actually existed or that they constitute jurisdictional defects. Nonetheless, it appears on the face of the petition that Judge Barron should have held a hearing on the legality of J.V.'s confinement pending the final hearing before Judge Gardner. If he found the confinement illegal, he could have temporarily placed

---

[8] Sec. 48.21(1)(a), Stats., provides:

"48.21 **Hearing for child in custody.** (1) HEARING; WHEN HELD. (a) If a child who has been taken into custody is not released under s. 48.20, a hearing to determine whether the child shall continue to be held in custody under the criteria of ss. 48.205 to 48.409 shall be conducted by the judge or juvenile court commissioner within 24 hours of the time the decision to hold the child was made, excluding Saturdays, Sundays and legal holidays. By the time of the hearing a petition under s. 48.25 shall be filed, except that no petition need be filed where a child is taken into custody under s. 48.19(1)(b) or (d)2, 6 or 7 or where the child is a runaway from another state, in which case a written statement of the reasons for holding a child in custody shall be substituted if the petition is not filed. If no hearing has been held within 24 hours or if no petition or statement has been filed at the time of the hearing, the child shall be released except as provided in par. (b). A parent not present at the hearing shall be granted a rehearing upon request."

custody of J.V. with whomever had custody before Judge Gardner's emergency order.

There still remains the relief sought in this case of whether Judge Barron should be held liable for $1,000, pursuant to sec. 292.06, Stats. (1977), for refusing to sign the writ. This statute traces back to the 1849 Statutes of Wisconsin, ch. 124, sec. 9, Rev. Stat. 1849, and before that to English law. Ingersoll, *The History and Law of the Writ of Habeas Corpus with an Essay on the Law of Grand Juries,* 7 (1849); *Note, Constitutional Law—Habeas Corpus,* 3 Cambridge L.J. 426, 327 (1929). The Wisconsin statute has provided since 1849 that if a judge willfully refuses to grant the writ of habeas corpus when the writ is legally applied for, he or she shall be liable to the person seeking relief in the sum of $1,000. The imposition of statutory damages for refusing to sign a legally applied for writ exemplifies the importance of the writ in Wisconsin, American and English law and history. It is interesting to note that in 1849 the amount provided was the same $1,000 as currently, and at that time the governor was paid $1,250 annually (Art. V, sec. 5) and judges $1,500 annually (Art. VII, sec. 10). These facts indicate the significance the early citizens of this state attached to the writ.

After a careful examination of this record, we find that there was an abundance of confusion concerning the proceedings and because of that confusion, we conclude that it would be inappropriate to hold Judge Barron liable.

As an initial matter, the record does not explain why the emergency custody order was sought in the first place. It appears that J.V. had been residing with his foster care mother for six months before Judge Gardner ordered J.V. as an emergency measure to temporarily reside with the foster care mother. We do not comprehend the need for the emergency custody order on the state of this record.

The recorded discussion between Judge Barron and the guardian ad litem when the judge refused to sign the order demonstrates additional confusion. Judge Barron stated: "[W]herein the attorney representing the relator in this matter has requested the Court to sign an Alternative Writ of Habeas Corpus requiring that the respondents produce before this Court the body of the relator . . . ." The purpose of the writ was stated correctly; however, there is no alternative writ in habeas corpus proceedings.

Later in the record when discussing *State ex rel. Porter v. Wolke,* 80 Wis. 2d 197, 257 N.W.2d 881 (1977), the judge spoke of "the order denying the preemptory [sic] habeas corpus." At another point, the judge stated when relating an agreement of the executive committee of the Milwaukee County Board of Judges to create a test case on "comity:"

"[A]nd it was decided at that Executive Committee that it would be inappropriate for a Circuit Judge to be in effect ruling on the propriety of an order issued by a fellow Circuit Judge. And that in order to test this, that Circuit Judges should not sign such petitions for writs, or I should say not sign an order granting an Alternative Writ of Habeas Corpus, and that the same should be forwarded to the appellate court for consideration by the one who was denied the order."

Finally, the judge stated: "Therefore, I am refusing to grant the Alternative Writ of Habeas Corpus."

In a writ of habeas corpus there is no alternative nor preemptory writ, the order is to produce the person.

Alternative or preemptory writs are found in the practice of mandamus or prohibition which present jurisdictional supervisory issues.

Due to the inadequate record in this case failing to state the necessity of Judge Gardner's emergency order and the inappropriate consideration of alternative or preemptory writ matters, this court will affirm the trial court decision of not holding Judge Barron liable. This is not a case where J.V.'s interests were fully and clearly presented nor "willfully" denied.

Judge Barron sincerely expressed broad concerns about the proper relationship between circuit court judges needed to attain effective administration of justice. Unfortunately, consideration of the true purpose of the writ of habeas corpus for the protection of J.V.'s rights became lost in a test case atmosphere. The record shows that the executive committee of the Milwaukee County Board of Judges, the Chief Judge of Milwaukee County and Judge Barron wanted a test case on the comity issue. Therefore, we refuse to single out Judge Barron and hold him liable for his refusal to sign the writ of habeas corpus. It is desirable, however, that if in the future, members of the judiciary, bar or public take issue with the general administration of habeas corpus, they would do so in the appropriate rule-making proceedings before the bar, this court, the Judicial Council, or the state legislature. In that way, a petitioner's possible legitimate right to liberty is not endangered. When weighing the balance between a person's legiti-

mate right to liberty and comity, the scale tips heavily in favor of liberty.

*By the Court.*—The judgment of the circuit court is affirmed.