687 A.2d 1035

IN THE MATTER OF THE REHABILITATION OF MUTUAL BENEFIT LIFE INSURANCE COMPANY, A MUTUAL INSURANCE COMPANY OF NEW JERSEY.

Superior Court of New Jersey
Appellate Division

Argued November 13, 1996—Decided February 4, 1997.

Before Judges MUIR, Jr., KLEINER and COBURN.

*Joseph J. Fleischman,* argued the cause for cross-appellant California Institute of Technology (*Hannoch Weisman,* attorneys; *Mr. Fleischman,* on the brief).

Cross-appellant *Edward H. Greenberg* filed a *pro se* brief.

*Steven R. Klein,* argued the cause for cross-respondent Elizabeth Randall, Rehabilitator of Mutual Benefit Life Insurance Company (*Peter Verniero,* Attorney General, attorney; *Cole, Schotz, Meisel, Forman & Leonard,* Special Counsel; *Cadwalad-*

er, *Wickersham & Taft*, Special Counsel; *Joseph L. Yannotti*, Assistant Attorney General, *Michael S. Meisel*, and *Mark C. Ellenberg*, of counsel and on the brief; *Sharon M. Hallanan*, Deputy Attorney General, *David M. Kohane, Peter M. Dodson, Joseph A. Rutigliano, Jr., Wendy F. Klein*, and *Mr. Klein*, on the brief).

The decision of the court was delivered by

MUIR, Jr., J.A.D.

This appeal is one discrete facet of the extensive litigation emanating from the potential insolvency of Mutual Benefit Life Insurance Company (MBL). Confronted with a drastic reduction in capital surplus created by poor quality investments and over-concentration in real estate assets that experienced precipitous declines, MBL's Board of Directors consented to MBL's takeover by the Commissioner of Insurance.

On July 16, 1991, Judge Levy signed a consent order with temporary restraints naming the then Commissioner of Insurance the Rehabilitator of MBL pursuant to the Life and Health Insurance Rehabilitation and Liquidation Act (RLA). *N.J.S.A.* 17B:32–31 to –91. The order vested the Commissioner with all powers authorized by the RLA and, among other things, generally restrained insureds from withdrawing funds held by MBL pursuant to policies, annuities, and other contracts. An effect of the order was to preclude policyholders' efforts to withdraw funds following media disclosures concerning MBL's tenuous capital surplus position. A company with asset book value of nearly $14 billion in 1991, MBL experienced $500 million in withdrawals in the first half of 1991, with $500 million more predicted if the restraints had not issued. The withdrawals left MBL's capital surplus perilously low.

This appeal focuses on the failed efforts of California Institute of Technology (Caltech) and one of its professors, Edward H. Greenberg, to withdraw their respective annuity funds from MBL just prior to the entry of the July 1991 restraining order. Caltech

had a group annuity contract with MBL to fund an annuity taxable in accordance with 26 *U.S.C.A.* § 403(b). During a period of time shortly before entry of the order, Caltech unsuccessfully sought to withdraw the entire annuity contract amount, $30 million. Professor Greenberg also unsuccessfully sought to withdraw his individual portion of the Caltech annuity. Both, after the entry of the order, filed claims with the Rehabilitator seeking withdrawal of their annuity funds. The Rehabilitator, pursuant to the RLA, which had an effective date of July 28, 1992, in concert with representatives of the insurance industry and an association of MBL policyholders, created a rehabilitation plan for MBL. Consonant with the plan, the Rehabilitator rejected the claims of Caltech and Professor Greenberg.

Judge Levy, as part of his comprehensive opinion sustaining the plan as modified, also rejected the claims of Caltech and Professor Greenberg. With the rehabilitator appealing the plan modifications, Caltech and Professor Greenberg cross-appeal from that part of the ensuing judgment that rejected their application for withdrawal of their full annuity funds. We affirm that portion of the ensuing judgment barring the withdrawals by Caltech and Professor Greenberg.

## I.

The RLA supplanted the Uniform Insurers Liquidation Act. *N.J.S.A.* 17B:32–1 to –30 (repealed 1992). The RLA's predominant purpose is the protection of the interests of insureds, claimants' creditors, and the public generally through, among other things, improved methods of rehabilitating insurers and enhanced efficiency and economy of liquidation in the event of rehabilitation failure. *See N.J.S.A.* 17B:32–31. Consistent with the rehabilitation purpose, *N.J.S.A.* 17B:32–43e provides in part:

> If the rehabilitator determines that reorganization, consolidation, conversion, reinsurance, merger or other transformation of the insurer is appropriate, he shall prepare a plan to effect such changes. Upon application of the rehabilitator for approval of the plan, and after such notice and hearings as the court may prescribe, the court may either approve or disapprove the plan proposed, or may modify it

and approve it as modified. Any plan approved under this section shall be, in the judgment of the court, fair and equitable to all parties concerned. If the plan is approved, the rehabilitator shall carry out the plan.

The RLA also creates a scheme for distribution of assets. Eight categories are created with the claims of the preceding class to be paid in full before members of the next class receive any payment. *N.J.S.A.* 17B:32-71a. Policyholders fall within Class 3, after Class 1 administrative expenses and Class 2 wage claims. All members of a class are to be treated equally with no subclasses created within any class. *Ibid.*

The Rehabilitator submitted a plan to Judge Levy for approval. The plan includes a Rehabilitation Agreement that centers on the liquidation of MBL and the transfer of all its assets and liabilities to Mutual Benefit Life Assurance Corporation (MBLAC), a wholly owned, but inactive, life insurance company subsidiary of MBL. The overall design of the plan is to rebuild the company so it can pay all policyholder claims and accumulate enough surplus to function as an independent company should it not be acquired during the rehabilitation period, which ends December 31, 1999.

The provisions of the plan relevant to this appeal center on the treatment of annuity contracts. All annuity contracts fall within the Class 3 category under the RLA. *See N.J.S.A.* 17B:32-71a(3). Under the plan, annuity contracts in Class 3 are included in "Reaffirmed" or "Restructured" categories. The reaffirmed category includes annuities that were in pay status—benefits were being paid out periodically as called for by the policyholder contract—as of July 16, 1991. All other annuity contracts fall within the restructured category, which encompasses the vast majority of policyholder contracts. Prior to transfer of its assets and liabilities to MBLAC, MBL is required to either reaffirm or restructure all policyholder contracts. The Caltech annuity plan is a restructured agreement under Class 3.

The essential thrust of the appeals of Caltech and Professor Greenberg is that, given the circumstances of their efforts to withdraw their annuity funds prior to entry of the July 16, 1991,

order, their annuity agreements should be classified not as restructured policyholders but as reaffirmed so as to allow them to transfer their annuity funds from the capital now in the hands of the Rehabilitator to other designated insurers.

The circumstances giving rise to the claims of Caltech and Professor Greenberg are set out in Judge Levy's opinion:

California Institute of Technology (Caltech) requested that MBL transfer its group annuity contract, worth approximately $38 million, to Prudential. Caltech claims it had a firm agreement from MBL to transfer the contract and the reserved assets before July 16, 1991, but that MBL fraudulently retained the funds. [Individual claims filed with the trial court included that of Professor Greenberg, who sought transfer to another pension plan.]

Caltech had purchased a group annuity contract on August 7, 1981 to fund a § 403(b) annuity program for its employees. In April 1991, approximately 1,245 employees or former employees were members of the group; Caltech was the designated contract-holder. Pursuant to ¶ G.1(a), Caltech had the right to discontinue further contributions under the contract, and per ¶ G.3 it could notify MBL that another funding agency had been selected for the plan and direct MBL to transfer the total value, calculated on the date of MBL's receipt of the notice, to the new agency. After two articles in the Wall Street Journal disclosed a reduction of MBL's debt rating, Caltech arranged for a conference with representatives of MBL to discuss "the continued financial viability of MBL." At the meeting, held May 29, 1991, MBL representatives, including William Clark, expressed the view that MBL was financially sound, and they encouraged Caltech not to discontinue making contributions. A few days earlier, however, MBL had advised the New Jersey Department of Insurance that its financial condition was "increasingly precarious" and it sought aid from the Commissioner in preserving its viability as an insurer.

On June 11, 1991, Caltech decided to discontinue contributions, and it notified Clark of this decision by telephone. Clark advised that a discontinuance and transfer could only be accomplished with the written consent of all the individual participants. Caltech observed that the contract did not require such consent, and it notified MBL, by facsimile transmission, that it was discontinuing its contributions and that all the reserved assets should be transferred to Prudential. This was one of the first transfer requests of such magnitude received by MBL, and MBL was concerned that, among other things, large withdrawal charges to be imposed on the participants (under the contract) might lead to litigation. After further negotiations, and upon advice of counsel, MBL agreed to make the transfer if Caltech would agree to indemnify MBL against any claims by the participants. Caltech agreed to the indemnification, and MBL agreed to make the transfer on July 10, 1991.

MBL continued to receive individual participants' requests for transfer, and this prevented MBL from making the full transfer requested by Caltech. The situation was resolved when MBL and Caltech agreed that MBL would not process any

individual requests received after July 9, 1991 and it would make the transfer to Prudential on July 17, 1991. MBL did not advise Caltech that it was so concerned about its financial position that it was contemplating rehabilitation. The effect of the court ordered rehabilitation on July 16, 1991 was to restrain the transfer of the Caltech assets to Prudential scheduled for the next day.

MBL was unable to process numerous other requests for transfer or withdrawal as quickly as they had in the past because the volume of requests was dramatically greater than it had ever been. There is no doubt that by early July 1991, MBL had paid out or transferred more than $500 million because of requests from policyholders. This experience, and an analysis revealing that it was likely that another $500 million would be withdrawn shortly, led MBL to seek the protection of the rehabilitation process.

[ (footnote omitted).]

Based on these facts, the Rehabilitator placed Caltech and Professor Greenberg in the restructured contract category of Class 3 claimants. Both challenged the classification before Judge Levy and sought a reaffirmed classification with the right to transfer the annuity funds to other pension plans. The judge rejected their application, stating:

Caltech seeks to have its participants accorded the same rights as apply to holders of reaffirmed contracts under the plan of rehabilitation. To accomplish this, Caltech proposes an amendment to the plan to specifically allow the holder of a reaffirmed contract the right to transfer or receive a lump sum distribution. But Caltech misperceives the concept of reaffirmed contracts under the plan. The obligations of such contracts are not conditioned on full immediate transfer or lump-sum withdrawals, and therefore they will not deplete the rehabilitation estate.

Allowing immediate withdrawal of this $38 million contract amounts to preferential treatment for the Caltech participants, as there are hundreds of similarly situated contractholders whose right to withdraw or transfer the assets supporting their plan participation were cut off by the July 16, 1991 order of this court.

On appeal, Caltech claims entitlement to the relief sought as dictated by the fair and equitable requirement of *N.J.S.A.* 17B:32–43e. While conceding fairness requires similar treatment of similarly situated parties, Caltech contends equity requires a specific amendment to the rehabilitation plan, placing Caltech in the reaffirmed category so it can transfer its funds. It argues that it should be treated differently from other policyholders who unsuccessfully sought transfers before July 16 because it was unique in: (1) timely exercising its contract right to transfer funds; (2) giving consideration (promise of indemnification for liability to partici-

pants who might later object) in exchange for a firm date for such transfer; and (3) relying to its detriment on MBL's promise to transfer (the "new contract") by directing MBL to cease processing individual participants' requests. Professor Greenberg adds that both he and Caltech detrimentally relied on MBL's misrepresentations by permitting the crucial delay instead of pressing for faster action. Caltech, however, concedes, and we agree, resolution does not turn on whether MBL's actions constituted equitable fraud. At the same time, it also concedes the relief sought is a pay status distinguishable from all other reaffirmed contracts.

## II.

We agree with Judge Levy that deferential treatment is not warranted here. The RLA makes protection of all insureds an overriding concern. In furtherance of that protection, it mandates all policyholders within a class be treated equally with no subclasses created. While not technically applicable in this instance, the RLA under *N.J.S.A.* 17B:32–57a specifically condemns preferential treatment of creditors. The condemnation of preferences is a further reflection of the RLA's overall goal of precluding deferential treatment. Allowing Caltech, or any of its annuity members, to withdraw lump sums would countervail the RLA's undisputed intent to preclude deferential treatment and would be pernicious to the plan's goal of preventing consequential drains of capital surplus. Consequently, we find no basis for disturbing that portion of the judgment under attack.

Beyond that, we reject Caltech's contention there is no subclass problem because there is already an approved dichotomy between restructured and reaffirmed contracts in the Class 3 category. The argument parries the question because not only does its proposal change its categorization to reaffirmed status, but also crucially redefines the rights of policyholders in that category by permitting lump sum transfers. Reclassification of Caltech's annuity contract would inequitably give its participants

better treatment than all others whose transfer rights were cut off by the July 16 order.

Accordingly, we reject the cross-appeals of Caltech and Professor Greenberg and affirm the judgment under appeal to the extent it applies to the issues decided.