Gregory T. ISERMANN, Plaintiff-Appellant,†

v.

MBL LIFE ASSURANCE CORPORATION, Defendant-
Respondent.

Court of Appeals

*No. 98–2846. Submitted on briefs June 29, 1999.—Decided
October 20, 1999.*

(Also reported in 605 N.W.2d 210.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *John F. Hovel* and *Joseph S.*

*Goode* of *Kravit, Gass, Hovel & Leitner, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Mary Kay Braza* and *Kevin A. Banasik* of *Foley & Lardner* of Milwaukee, and *Bryan B. House* of *Foley & Lardner* of Washington, DC.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. SNYDER, J. This appeal stands in the midst of the rehabilitation and liquidation of Mutual Benefit Life Insurance Company (MBL) of New Jersey. MBL was placed under rehabilitation by a New Jersey state court in 1991, and its assets and liabilities were subsequently transferred to MBL Life Assurance Corporation (MBLLAC), a subsidiary of and the eventual successor to MBL.

¶ 2. Prior to MBL's rehabilitation, Gregory T. Isermann obtained disability income policies from MBL. In 1993, Isermann submitted a claim under the policies. MBL denied his claim and sought rescission as to two of his policies. Isermann then alleged breach of contract and bad faith claims and requested a declaration of rights as to the contested policies. After both parties moved for summary judgment, the circuit court ruled in MBLLAC's favor and dismissed Isermann's suit. Isermann now contends that the court erred in concluding that it did not have subject matter jurisdiction to address his claims. Upon review, we conclude that Isermann is correct that the court had subject matter jurisdiction; however, fundamental principles of comity compel us to honor the New Jersey rehabilitation court's assertion of exclusive jurisdiction in this matter. We therefore affirm the circuit court's orders

142

granting summary judgment in favor of MBLLAC and denying Isermann's motion for summary judgment.

## BACKGROUND

### MBL's Rehabilitation

¶ 3. On July 16, 1991, the New Jersey Superior Court, Chancery Division, Mercer County (the rehabilitation court) placed MBL into rehabilitation. The rehabilitation of MBL was commenced pursuant to New Jersey's Uniform Insurers Liquidation Act (UILA). In 1992, New Jersey repealed the UILA and enacted the Life and Health Insurers Rehabilitation and Liquidation Act (RLA), and MBL's rehabilitation proceeded under this act. *See* N.J. STAT. ANN. §§ 17B:32–31 to :32–91 (West 1999).

¶ 4. As directed by the rehabilitation court's July 16, 1991 order, the Insurance Commissioner of New Jersey was named the rehabilitator of MBL. The court enjoined further prosecution of any action at law against MBL. As part of the order, MBL ceased to exist as such and "Mutual Benefit Life Insurance Company in Rehabilitation" began operating as the successor to MBL. The rehabilitator was ordered to begin conducting the business of MBL and to take such steps "appropriate toward removing the cause and conditions which made rehabilitation necessary."[2] All insurance contracts previously issued by MBL remained in force except where cancellation was allowable by law. The rehabilitation order also enjoined all

---

[2] MBL's rehabilitation was triggered by "a drastic reduction in capital surplus created by poor quality investments and over-concentration in real estate assets that experienced precipitous declines." *In re Rehabilitation of Mut. Benefit Life Ins. Co.*, 687 A.2d 1035, 1035 (N.J. Super. Ct. App. Div. 1997).

policyholders from bringing any lawsuit against MBL or the rehabilitator.

¶ 5. On August 7, 1991, the rehabilitation court entered a second order which established a procedure for seeking relief from the restraints set forth in the original order. Pursuant to the order, a claimant could seek relief through the rehabilitator. If the claimant was dissatisfied with the decision issued by the rehabilitator, further review could be sought through the rehabilitation court.

¶ 6. In a subsequent order issued on January 28, 1994, the rehabilitation court approved the "Third Amended Plan of Rehabilitation" (rehabilitation plan) of MBL detailing the treatment of claims against MBL and MBLLAC. Under the rehabilitation plan, the rehabilitation court retained exclusive jurisdiction to hear and determine all disputes that might arise between "(a) any Claim Holder and (b) MBL, MBLLAC, the Rehabilitator, the Liquidator or the Trusts."

¶ 7. The rehabilitation court's January 28, 1994 order also authorized the "Third Amended Rehabilitation Agreement" (rehabilitation agreement) between MBL and MBLLAC, setting forth procedures for the transfer and restructuring of MBL's assets and liabilities. Under § 2.5 of the agreement, disability income contracts with MBL were to be treated as "Reaffirmed Contracts," which "shall be assigned and transferred to MBLLAC and assumed and reinsured by MBLLAC in accordance with the terms of Article 4." Section 4.2 of the agreement, entitled "Assumption of Liabilities," stated that MBLLAC "shall assume and reinsure the Reaffirmed Contracts . . . in effect on the Closing Date and shall pay, perform and/or discharge all liabilities with respect to the Reaffirmed Contracts."

144

¶ 8. Pursuant to the rehabilitation agreement, MBL's liquidation proceedings began on the closing date of April 29, 1994. MBL currently exists as "Mutual Benefit Life Insurance Company In Liquidation." MBL's liquidation continues until December 31, 1999.

## Isermann's Disability Policies

¶ 9. In 1981, 1982 and 1988, Isermann purchased various disability income insurance policies from MBL. These policies remain in force and are not the subject of this litigation. At issue are two additional disability income policies which were issued to Isermann on March 19 and June 30, 1991.

¶ 10. On March 7, 1993, Isermann submitted a claim requesting disability coverage due to the effects of carpal tunnel syndrome. MBL provided coverage under Isermann's 1981, 1982 and 1988 policies, but after reviewing his file it rescinded the 1991 policies on September 7, 1993. According to MBLLAC, Isermann had made material misrepresentations in the applications for his 1991 policies.

¶ 11. On April 29, 1996, Isermann brought this action against MBLLAC as the successor to MBL, claiming breach of contract and bad faith refusal to pay benefits and seeking a declaratory judgment of his rights pursuant to § 806.04, STATS. Both parties brought motions for summary judgment. MBLLAC contended that Isermann had "sued the wrong party in the wrong jurisdiction" and that his claims were against MBL and should have been brought in MBL's rehabilitation proceeding in New Jersey. In September 1997, the circuit court granted MBLLAC's motion for

summary judgment on the ground that the court lacked subject matter jurisdiction.[3]

## DISCUSSION

¶ 12. Isermann maintains that the circuit court erred in granting summary judgment in favor of MBLLAC. We review a circuit court's grant of summary judgment using the same methodology as the circuit court. *See M&I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175, 182 (Ct. App. 1995). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.* at 497, 536 N.W.2d at 182; § 802.08(2), STATS. We must view the evidence in the light most favorable to the nonmoving party, in this case, Isermann. *See Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473, 477 (1980). For the purposes of this appeal, there are no disputed facts; thus, we may resolve this dispute as a matter of law.

¶ 13. In its decision, the circuit court concluded that it lacked subject matter jurisdiction to address Isermann's breach of contract and bad faith claims. The court reasoned that Isermann's claims were against MBL because they arose before the date of

[3] Besides the instant case against MBLLAC, Isermann has pursued two other courses of action against MBL. In February 1994, Isermann filed an administrative complaint with the Wisconsin Commissioner of Insurance. The Commissioner declined to pursue the matter. In October 1997, Isermann made a "written request" to the rehabilitator seeking relief against MBL pursuant to the rehabilitation agreement and plan. The rehabilitation court stayed the proceedings pending the outcome of Isermann's present claims in Wisconsin.

MBL's dissolution and the claims fell under the rehabilitation plan's definition of a "claim," thereby making Isermann a "claim holder" subject to the plan. The court also stated that Wisconsin courts were bound by the rulings in the New Jersey Rehabilitation Court because Wisconsin is a reciprocal state to New Jersey for the purposes of ch. 645, STATS., Wisconsin's Insurers Rehabilitation and Liquidation Act (WIRLA). The court concluded that the rehabilitation court had exclusive jurisdiction over the matter.

¶ 14. Isermann argues that the circuit court was wrong in finding that it did not have subject matter jurisdiction. First, he asserts that his claims lie against MBLLAC, not MBL, and that he is therefore not a "claim holder" as defined by the rehabilitation plan. Second, Isermann states that the court erred in failing to consider his claim for a declaration of his rights and the corresponding obligations of MBLLAC. Upon review, we conclude that Isermann is correct that the circuit court had subject matter jurisdiction; nonetheless, we are convinced that the doctrine of comity leads us to the same result reached by the circuit court. *See State v. Holt*, 128 Wis. 2d 110, 125, 382 N.W.2d 679, 687 (Ct. App. 1985) (we may affirm the trial court on grounds other than those relied on by the court).

## A. Subject Matter Jurisdiction

¶ 15. Subject matter jurisdiction in Wisconsin is "conferred by the constitution and statutes of this state and by statutes of the United States." Section 801.04(1), STATS. Article VII, Section 8 of the Wisconsin Constitution directs that "[e]xcept as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state and such appellate jurisdiction in the circuit as

147

the legislature may prescribe by law." The jurisdiction granted by the constitution upon circuit courts is "plenary in respect to all matters at law or in chancery, jurisdiction, in the sense of judicial power to act." *Eberhardy v. Circuit Court*, 102 Wis. 2d 539, 551, 307 N.W.2d 881, 886 (1981). Hence, "[n]o circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever." *Mueller v. Brunn*, 105 Wis. 2d 171, 176, 313 N.W.2d 790, 792 (1982).

¶ 16. We have no doubt that the circuit court had subject matter jurisdiction to entertain Isermann's claims. *See State ex rel. Dykhouse v. Edwards*, 908 S.W.2d 686, 687 (Mo. 1995) (en banc) (Missouri circuit court had subject matter jurisdiction over state actions against insurer in rehabilitation despite Michigan court order prohibiting further litigation against insurer). Regardless, fundamental principles of comity control this action.

### B. Comity

¶ 17. In *J.V. v. Barron*, 112 Wis. 2d 256, 332 N.W.2d 796 (1983), our supreme court explained the doctrine of comity.

> Comity is not a rule of law, but one of practice, convenience and expediency. It is something more than mere courtesy, which implies only deference to the opinion of others, since it has a substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question. But its obligation is not imperative. . . . Comity persuades; but it does not command. It declares not how a case shall be decided, but how it may with propriety be decided. . . . It demands of no one that

he [or she] shall abdicate his [or her] individual judgment, but only that deference shall be paid to the judgments of other coordinate tribunals.

*Id.* at 263–64, 332 N.W.2d at 801 (quoting *Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 488–89 (1900)). More succinctly, the rule of comity is a "voluntary decision of one state to defer to the policy of another in an effort to promote uniformity of laws, harmony in their application, and other related principles." *State ex rel. Dykhouse*, 908 S.W.2d at 689–90.

¶ 18. In deciding whether the principle of comity applies, courts should consider the public policy, convenience and protection of the interests of the state's citizens. *See Disconto Gesellschaft v. Umbreit*, 127 Wis. 651, 662, 106 N.W. 821, 823 (1906), *aff'd*, 208 U.S. 570 (1908); *Haeuser v. Haeuser*, 200 Wis. 2d 750, 759 n.4, 548 N.W.2d 535, 539 (Ct. App. 1996) (giving "due regard to duty and convenience and to the rights of its own citizens"). In addition, the scope of comity is determinable as a matter of judicial policy. *See International Harvester Co. of America v. McAdam*, 142 Wis. 114, 119, 124 N.W. 1042, 1044 (1910).

¶ 19. The principle of comity governs here because both Wisconsin and New Jersey have enacted very similar insurance rehabilitation and liquidation acts, both of which seek to satisfy the same public policy objectives. In addition, we believe the policy supporting comity outweighs any detriment to the resident policyholder.

¶ 20. Under WIRLA, New Jersey is considered a reciprocal state. Wisconsin defines a "reciprocal state" as "any state other than this state in which in substance and effect ss. 645.42(1), 645.83(1) and (3), 645.84 and 645.86 to 645.89 are in force, and in which

provisions are in force requiring that the commissioner be the receiver of a delinquent insurer, and in which some provision exists for the avoidance of fraudulent conveyances and preferential transfers." Section 645.03(1)(i), STATS. The language of New Jersey's RLA is much the same as WIRLA. *See* N.J. STAT. ANN. §§ 17B:32–31 to :32–91. A review of these two acts convinces us that they are sufficiently similar to qualify each state as a reciprocal state under the law of the other. *See, e.g., American Bonding Co. v. Coastal Metal Sales, Inc.,* 679 So. 2d 1250, 1251 (Fla. Dist. Ct. App. 1996) (Florida and Arizona are reciprocal states).

¶ 21. New Jersey's RLA sets forth the following purposes underlying the act:

(1) Early detection of any potentially dangerous condition in an insurer, and prompt application of appropriate corrective measures;

(2) Improved methods for rehabilitating insurers, involving the cooperation and management expertise of the life and health insurance industry;

(3) Enhanced efficiency and economy of liquidation, through clarification of the law, to minimize legal uncertainty and litigation;

(4) Equitable apportionment of any unavoidable loss;

(5) Lessening the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process, and by extending the scope of personal jurisdiction over debtors of the insurer outside this State;

(6) Regulation of the insurance industry by the impact of the law relating to delinquency procedures and substantive rules on the entire life and health insurance industry; and

(7) Providing for a comprehensive scheme for the rehabilitation and liquidation of life and health insurers and others subject to this act as part of the regulation of the business of insurance, insurance industry and insurers in this State. Proceedings in cases of insurer insolvency and delinquency are deemed an integral aspect of the business of insurance and are of vital public interest and concern.

N.J. STAT. ANN. § 17B:32–31(b). These principles were summarized in *In re Mutual Benefit Life Insurance Co.*, 609 A.2d 768 (N.J. Super. Ct. App. Div. 1992), where the court described the objective behind the UILA, the precursor to the RLA. "The purpose, thus, of the UILA is to provide for a *uniform, orderly and equitable method of making and processing claims* against financially troubled insurers and to provide for fair procedures for rehabilitating the business of such insurers and, if necessary, distributing their assets. The UILA also recognizes the *benefits of centralizing the management of delinquency proceedings* in the courts of one state." *Id.* at 775 (emphasis added; citations omitted).

¶ 22. WIRLA's statement of purpose seeks the same objectives as New Jersey's RLA.[4] In the end, both

---

[4] Section 645.01(4), STATS., states the following purposes of Wisconsin's Insurers Rehabilitation and Liquidation Act:

(a) Early detection of any potentially dangerous condition in an insurer, and prompt application of appropriate corrective measures, neither unduly harsh nor subject to the kind of publicity that would needlessly damage or destroy the insurer;

(b) Improved methods for rehabilitating insurers, by enlisting the advice and management expertise of the insurance industry;

(c) Enhanced efficiency and economy of liquidation, through clarification and specification of the law, to minimize legal uncertainty and litigation;

look to employ more effective methods for rehabilitating insurers, to improve efficiency of the liquidation process while reducing the amount of litigation, to establish cooperation between states to reduce problems of interstate rehabilitation, and to provide a comprehensive scheme to address insurance rehabilitation. We believe these policies are best supported in this case by yielding to the expertise and uniform procedures of the rehabilitation court in New Jersey. Although a policyholder residing in this state would have to bear the inconvenience of pursuing his or her claims in a foreign state, we are satisfied that the goal of a uniform and efficient rehabilitation process, as resoundingly embraced by Wisconsin and New Jersey, outweighs the policyholder's inconvenience. Thus, we apply the doctrine of comity here by following the rehabilitation plan.

## C. Rehabilitation Plan

¶ 23. The rehabilitation plan provides that the rehabilitation court has "exclusive jurisdiction" over MBL's rehabilitation proceedings. Section 9.02(b)(3) states that the court shall hear

> [a]ll controversies, suits, and disputes, if any, as may arise with respect to the period prior to the Closing Date between (a) any Claim Holder and (b)

(d) Equitable apportionment of any unavoidable loss;

(e) Lessening the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process, and by extension of the scope of personal jurisdiction over debtors of the insurer outside this state; and

(f) Regulation of the insurance business by the impact of the law relating to delinquency procedures and substantive rules on the entire insurance business.

*MBL, MBLLAC*, the Rehabilitator, the Liquidator or the Trusts . . . . [Emphasis added.]

Under the definitional section of the plan, a "claim holder" means anyone holding a claim, and a "claim" refers to "any claim against *MBL*, whether matured or unmatured, liquidated or unliquidated, secured or unsecured, absolute or fixed or contingent, that arises before the date of dissolution of MBL pursuant to the Plan." Sections 1.10, 1.11 (emphasis added). MBLLAC argues that the § 9.02(b)(3) language is controlling since Isermann is a claim holder and MBLLAC is specifically referenced in that section. Isermann responds that the definition of a "claim" should govern, that his claim is against MBLLAC alone, and that therefore the rehabilitation plan does not apply. We agree with MBLLAC.

¶ 24. Because the rehabilitation plan was approved by order of the rehabilitation court, we construe the plan as we would a court order. In doing so, we note that the "same rules of interpretation apply in ascertaining the meaning of an order as in ascertaining that of any other writing," such as a contract. 60 C.J.S. *Motions & Orders* § 64 (1969).

¶ 25. Where the terms of a contract are plain and unambiguous, we construe the contract as it stands. *See Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653, 656 (Ct. App. 1990). Courts must read contracts to give a reasonable meaning to each provision and avoid a construction that renders portions of a contract meaningless. *See Wilke v. First Fed. Sav. & Loan Ass'n*, 108 Wis. 2d 650, 657, 323 N.W.2d 179, 182 (Ct. App. 1982). Where there is an apparent conflict between a general and a specific provision, the latter controls. *See Goldmann Trust v. Goldmann*, 26 Wis. 2d

141, 148, 131 N.W.2d 902, 906 (1965). If possible, contradictory statements in a contract must be harmonized; but where it is impossible to give meaning to both parts, the court must determine which is to be given effect. *See Chicago, Milwaukee & St. Paul Ry. Co. v. H. W. Wright Lumber Co.*, 123 Wis. 46, 50–51, 100 N.W. 1034, 1036 (1904).

¶ 26. We are convinced that the plan's definitional section and the provisions detailing the rehabilitation court's jurisdiction can be harmonized to give meaning to both sections without rendering any language surplusage. While the definition of a "claim" only mentions MBL, we do not read the section as attempting to limit the jurisdiction of the court. Rather, the emphasis of the definition appears to be on the expansiveness of what constitutes a "claim"—namely, "any" claim, no matter its status, as long as it arises before MBL's dissolution, which is December 31, 1999.

¶ 27. Section 9.02(b)(3), meanwhile, expressly addresses the rehabilitation court's jurisdiction. First, a claim heard by the court must have arisen before the closing date, April 29, 1994, thereby narrowing the time frame set forth above. Second, the court is allotted jurisdiction over any dispute between a claim holder and MBL, MBLLAC, the rehabilitator, the liquidator or the trusts. To the extent that the definitional section and § 9.02(b)(3) conflict, we are persuaded that the more specific language of § 9.02(b)(3) controls. To decide otherwise would render § 9.02(b)(3)'s language meaningless. Certainly, if the drafters of the plan intended to limit claims only to actions against MBL, they would have stated so in the plan's particular provisions addressing jurisdiction. We conclude therefore that in order to harmonize the definition of a "claim"

and § 9.02(b)(3), the plan should be read as giving the rehabilitation court exclusive jurisdiction over actions against MBL as well as MBLLAC.

¶ 28. Isermann is a claim holder under the plan because he asserts a claim against MBLLAC which arose before MBL's closing date. Isermann does not dispute that MBL issued the policies, conducted the claim investigation and sent him a letter of rescission, all prior to April 29, 1994. Accordingly, we conclude that Isermann's claim against MBLLAC should be addressed by the rehabilitation court in New Jersey.

¶ 29. In support of this conclusion, we note that WIRLA contains express language addressing the claims of residents against insurers domiciled in reciprocal states.

> In a liquidation proceeding in a reciprocal state against an insurer domiciled in that state, claimants against the insurer who reside within this state may file claims either with the ancillary receiver, if any, in this state, or with the domiciliary liquidator.

Section 645.87, STATS.; *see* N.J. STAT. ANN. § 17B:32–85. Here, MBL is domiciled in the reciprocal state of New Jersey, and Isermann is a Wisconsin resident who seeks to pursue a claim against his insurer. Section 645.87 permits Isermann to seek relief either with a receiver in Wisconsin or with New Jersey's liquidator. Because no ancillary receiver was appointed in Wisconsin to receive claims in MBL's rehabilitation, Isermann's remaining avenue of relief is thus with the rehabilitation court. *See, e.g., G. C. Murphy Co. v. Reserve Ins. Co.*, 429 N.E.2d 111, 115 (N.Y. 1981) (absent the appointment of an ancillary receiver in

New York regarding liquidation proceedings against Illinois insurer, New York plaintiff had to pursue its claim against the liquidator in Illinois); *Financial Int'l Life Ins. Co. v. Beta Trust Corp.*, 405 So. 2d 306, 308 (Fla. Dist. Ct. App. 1981) (where no ancillary receiver had been appointed in Florida, claims against an insurer subject to receivership in New Mexico had to be proved in New Mexico).

### D. Isermann's Arguments

¶ 30. Isermann's central argument is that he is not a "claim holder" under the rehabilitation plan because the instant action is against MBLLAC, not MBL. He contends that the trial court erred because it failed to consider two critical facts: (1) that as of the April 29, 1994 closing date, MBLLAC is alleged in this action to have assumed and reinsured both the 1991 policies and the corresponding liabilities under those policies; and (2) that MBLLAC's answer to Isermann's complaint admitted that MBLLAC was the successor to MBL. Isermann proceeds at some length to show that "the importance of these two facts is illustrated" by (1) MBLLAC's admissions in a similar action in the United States District Court for the District of Tennessee, (2) actions taken by MBLLAC in this court, (3) the Eighth Circuit's decision in *Wolfson v. Mutual Benefit Life Insurance Co.*, 51 F.3d 141 (8th Cir. 1995), and (4) established law on successor liability.

¶ 31. Isermann's multi-faceted analysis need not be considered here because we have already determined that his claims, be they against MBLLAC or MBL, should be addressed by the rehabilitation court. The "two important facts" upon which Isermann relies—that MBLLAC is the successor to MBL and that

MBLLAC has assumed and reinsured Isermann's 1991 policies—may very well be true, but because we are deferring to the rehabilitation court's exclusive jurisdiction over claims against *both* MBL and MBLLAC, Isermann's "important facts" are rendered moot.

¶ 32. Isermann additionally complains that MBLLAC failed to raise in its pleadings its affirmative defense of the trial court's lack of subject matter jurisdiction. As MBLLAC argues, however, it has no obligation to raise the defense because Wisconsin law clearly provides that subject matter jurisdiction cannot be waived. Section 802.06(8)(c), STATS., states that "[i]f it appears by motion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." The circuit court, in fact, cited § 802.06(8)(c) in its decision, concluding that it lacked subject matter jurisdiction over the dispute.

¶ 33. Even if subject matter jurisdiction was never raised by MBLLAC, but was instead reviewed sua sponte, the circuit court was correct in dismissing Isermann's action. "The laws of this state require courts to observe the limits of their powers and inquire into their jurisdiction over an action, even though the parties do not raise the issue." *County of Milwaukee v. LIRC*, 113 Wis. 2d 199, 203, 335 N.W.2d 412, 415 (Ct. App. 1983). Although we come to a different conclusion on the issue of subject matter jurisdiction, the circuit court did not err in addressing the issue.

¶ 34. Finally, Isermann asserts that while the circuit court ruled on his breach of contract and bad faith claims, it failed to address his claim for declaratory relief. Isermann maintains that the court was obligated to address his claim for a declaratory judgment because § 806.04(2), STATS., provides that "[a]ny

person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder." We are not persuaded.

¶ 35. For the same reason that Isermann's breach of contract and bad faith claims should be addressed by the rehabilitation court, so should his claim for declaratory relief be addressed by the rehabilitation court. The purposes of the rehabilitation and liquidation acts would be subverted if an ancillary state could address a claim for declaratory judgment while the domiciliary state retained jurisdiction over the remaining claims. Such a result would undermine the objective of a "uniform, orderly and equitable" procedure and would decentralize the management of the proceedings. *See In re Mutual Benefit Life Ins. Co.*, 609 A.2d at 775. Therefore, we conclude that as a matter of comity the rehabilitation court's jurisdiction applies to all of Isermann's claims.

*By the Court.*—Orders affirmed.