## CIRCUIT COURT OF THE CITY OF WINCHESTER

Melissa V. Jones

v.

Anne Caldwell et al.

March 31, 2003

Case No. (Law) 01-213

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the Motion for interpleader of the Defendants Caldwell and Voorhees, to which the plaintiff consented, but which was opposed by the Receiver of the Doctors Insurance Reciprocal. The parties earlier appeared before the Court and, at the Court's direction, have filed briefs, which the Court has considered. The Court has decided to grant the Motion for Interpleader.

### I. *Statement of Material Facts*

The following material facts are not in dispute.

Doctors Insurance Reciprocal ("DIR") is a risk retention group domiciled in the State of Tennessee, which provides professional malpractice insurance coverage to physicians in numerous states, including Virginia and Tennessee.

On January 16, 2003, DIR, on behalf of Dr. Voorhees and Dr. Caldwell, entered into a settlement agreement with the Plaintiff in the underlying medical malpractice case.

On January 24, 2003, DIR issued a check in the amount of $200,000 pursuant to the settlement agreement and sent the check to counsel for Defendants Caldwell and Voorhees. This is the check which the parties, except for DIR, want to endorse and interplead into the court.

On January 29, 2003, the Circuit Court of the City of Richmond entered a Final Order of Rehabilitation ("Virginia Rehabilitation Order"), which placed Reciprocal of America ("ROA") and The Reciprocal Group ("TRG") into receivership proceedings in accordance with Title 38.2, Chapters 12 and 15, of the Virginia Code. As recited in the Virginia Rehabilitation Order, ROA and TRG provided reciprocal insurance and reinsurance services. *See* Virginia Rehabilitation Order at 2, ¶ 3. The Richmond Circuit Court asserted "exclusive *in rem* jurisdiction" over all property and assets of ROA and TRG and vested the Virginia State Corporation Commission and Virginia Commissioner of Insurance, Alfred Gross, with "exclusive title, both legal and equitable, to all of [ROA's and TRG's] property, including all . . . assets, books, [and] records. . . ." *Id.* at 9-10, ¶ 8.

DIR reinsured "substantially all" of its insurance business with ROA. Since the entry of the Virginia Rehabilitation Order, ROA has not been meeting its reinsurance obligations to DIR. Consequently, at this time, DIR does not have sufficient assets in its possession to meet its coverage commitments to its own insureds. Thus, because of DIR's "hazardous financial condition," which rendered "further transaction of its business without rehabilitation . . . hazardous financially to the insurer's policyholders, creditors, and the public, the Chancery Court of Davidson County, Tennessee, entered a Consent Order of Rehabilitation on January 31, 2003, over DIR, its business, its property, and its assets. *See* DIR Rehabilitation Order.

Similar in nature to the Virginia Order, the DIR Rehabilitation Order vests Tennessee Commissioner of Insurance, Flowers, with "title to all assets of DIR" wherever located. *Id.* at 3, ¶ 1. The DIR Rehabilitation Order provided that all:

> bank[s], savings and loan association[s], financial institution[s], or other person[s], which [have] on deposit, in its possession, custody, or control any funds, accounts, and any other assets of DIR, shall immediately transfer title, custody, and control of all such funds, accounts, or assets to the Rehabilitator, and are

hereby instructed that *the Rehabilitator has absolute control over such funds, accounts, and other assets*. The Rehabilitator may change the name of such accounts and other assets, withdraw them from such bank, savings and loan association, or other financial institution, or take any lesser action necessary for the proper conduct of this receivership.

*Id.* at 4-5, ¶ 4 (emphasis added).

The DIR Rehabilitation Order also contains two injunctions. The first enjoins the initiation or further prosecution of any lawsuits against DIR or the Receiver:

[a]ll persons, firms, corporations, and associations . . . are prohibited and temporarily enjoined from . . . the commencement or prosecution of any actions, or the obtaining of preferences, judgments, attachments, or other liens, or the making of any levy against the insurer or against its assets or any part thereof until further order of this Court.

*Id.* at 3-4, ¶ 2. The second injunction temporarily stays actions against insureds of DIR which are pending in the State of Tennessee.

[A]ny court in this State before which any action in which the insurer is a party, or is obligated to defend a party, is pending when this rehabilitation order is entered, shall stay the action or proceeding for ninety (90) days and such additional time as is necessary for the Rehabilitator to obtain proper representation and prepare for further proceedings. *Id.* at 7, ¶ 12. With respect to this second injunction, the Order affirmatively directs the Receiver to "consider all litigation pending outside this State and *shall petition the courts having jurisdiction over that litigation for stays whenever necessary to protect the estate of the insurer.*"

*Id.* (emphasis added).

According to the Receiver, DIR's financial condition continues to be hazardous, numerous actions against DIR insureds remain pending in various States, and many settlements of such actions remain open and unfunded. At this time, DIR does not have sufficient assets on hand to fully satisfy all coverage obligations to its insureds, including settlements relating to its insureds.

Pursuant to the directive of the Davidson County Chancery Court, Special Deputy J. Knox Walkup sent a letter to this Court on February 6, 2003, advising the Court of the DIR receivership and requesting a stay of this action in a manner concordant with the DIR Rehabilitation Order. The request for a stay of the underlying malpractice trial, which was scheduled to begin on February 25, 2003, was denied. That trial commenced as scheduled against the remaining defendant, Caldwell and Voorhees having been dismissed with prejudice based on the settlement of the Plaintiff's claim.

In response to the February 6, 2003, letter to the Court, counsel for the Receiver received a letter on February 10th from counsel for the Plaintiff. In that letter, Plaintiff's counsel stated:

> the claim against Drs. Caldwell and Voorhees was mediated and settled on January 16, 2003. The terms of the settlement was a payment of $200,000.00 in cash and the purchase of an annuity in the amount of $175,000.00. . . .
>
> All parties were aware of the fact that the affairs of Doctors Insurance Reciprocal were precarious, and it was the intention of the parties, and indeed a principal factor in agreeing to the settlement, that the matter could be carried out to a conclusion prior to that occurring. It is my understanding that a check was issued by Doctors Insurance Reciprocal pursuant to the terms of the settlement very promptly after January 16, but was not sent to the payees, and still has not been sent. Counsel for Drs. Caldwell and Voorhees indicates that he intends to file some sort of interpleader action and deliver the check to the court, but as far [as] I am concerned, this in no way would satisfy the terms of the settlement.
>
> It would seem to me that the better view would be that this settlement was a *fait accompli* well prior to the entry of the decree of the Tennessee Chancery Court on January 31, 2003. It would seem in everyone's best interest if the receiver simply authorized payment of the check. If this is done, the entire matter insofar as Doctors Insurance Reciprocal, Drs. Caldwell and Voorhees, its insurers, and Melissa Jones is, as it should be, over and done with. If not, Mrs. Jones has to make a decision as to whether to enforce the terms of the settlement directly against Drs. Caldwell and Voorhees, or to consider the settlement void and attempt to have her day in court unimpeded by the problems associated with the insurer of Drs. Caldwell and Voorhees.

> After all, the presence of insurance, or the lack thereof, is wholly irrelevant to litigation or any issue therein.

Correspondence dated February 10, 2003, from Thomas P. Mains, Esq., to J. Graham Matherne, Esq.

On February 11th, counsel for the Receiver received by facsimile transmission a Motion for Interpleader filed by Defendants Caldwell and Voorhees. In that Motion, Defendants asserted that, by requesting a stay of this action, Commissioner Flowers "has voluntarily entered a general appearance and subjected . . . to the jurisdiction of this Court." Motion for Interpleader at 3-4, ¶ 9. Accordingly, movants request that the Court order, among other things, Commissioner Flowers be "interpleaded and made [a] part[y] to this interpleader action;" Defendants to "pay" the settlement check to the Court; and Commissioner Flowers to "direct the appropriate financial institution(s) of the Doctors Insurance Reciprocal to honor that check. . . ."

## II. *Conclusions of Law*

Pursuant to the McCarran-Ferguson Act, Congress declared:

> that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

15 U.S.C. § 1011. *See also* 15 U.S.C. § 1012(a) ("[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several Sates which relate to the regulation or taxation of such business."). As a consequence, "[t]he states have primary responsibility for regulating the insurance industry." *Barnhardt Marine Ins., Inc. v. New England International Surety of Am., Inc.*, 961 F.2d 529, 531 (5th Cir. 1992). *See also Clark v. FitzGibbons*, 105 F.3d 1049, 1051 (5th Cir. 1997); *Lac D'Amiante du Quebec v. American Home Assur. Co.*, 864 F.2d 1033, 1039 (3d Cir. 1988). To that end, many states — including Tennessee, but not Virginia — have adopted the Uniform Insurance Liquidation Act. Because the regulation of the business of insurance has been relegated to the respective legislatures of each of the United States, *see* 15 U.S.C. § 1012(a), each state has enacted its own comprehensive scheme for the orderly supervision, rehabilitation, and/or liquidation of insolvent insurance companies. Federal legislation specifically

bars domestic and foreign insurance companies from the shelter of federal bankruptcy courts and the protections afforded by the automatic stay provisions of the Bankruptcy Code. *See* 11 U.S.C. §§ 109, 362. *See generally Clark v. Williard*, 292 U.S. at 127.

In *Gilpin v. Joyce*, 257 Va. 579, 515 S.E.2d 124 (1999), the Supreme Court held that an appearance for any purpose other than questioning the jurisdiction of the court because there was no service of process, that the process was defective, or the action was commenced in the wrong county, or the like, is a general and not a special appearance, although accompanied by the claim that the appearance is only special. A general appearance is equivalent to personal service of process and confers jurisdiction of the person on the court. *Id.* at 581, 515 S.E.2d at 125. *See also, Maryland Casualty Co. v. Clintwood Bank, Inc.*, 155 Va. 181, 154 S.E. 492 (1930) (any action of a defendant, except objection to jurisdiction, which recognizes the case is in court, amounts to a general appearance); *Brown v. Burch*, 30 Va. App. 670, 519 S.E.2d 409 (1999) (if a defendant makes any motion which does not involve the question of the court's jurisdiction, he thereby waives all defects in process and the return thereon).

Counsel for Caldwell and Voorhees argue that the Receiver, by requesting a stay and then pursuing that request before this court, has made a general appearance, thereby subjecting himself and DIR to the jurisdiction of this Court. Nowhere in the Receiver's February 6, 2003, letter does it question the Court's jurisdiction or indicate that it is attempting to make a special appearance. Therefore, Caldwell and Voorhees argue that because the Receiver made a motion which did not involve the question of the Court's jurisdiction, it has subjected itself to the jurisdiction of this Court. Counsel for the Tennessee Receiver has appeared by telephone in this Court and has filed pleadings, albeit they are captioned as an "amicus brief."

The Receiver apparently claims that his February 6, 2003, letter to this Court containing his request for a stay is simply a private missive, but the attorneys representing the Tennessee Receiver have appeared before this court and complied with its briefing order. The Receiver has characterized his pleadings as "amicus briefs." "The literal meaning of the term 'amicus curiae' is a friend of the court . . . [and] [t]he term refers to persons . . . who interpose in a judicial proceeding to assist the court by giving information. . . ." 4 Am. Jur. 2d, *Amicus Curiae*, § 4. Appearance as an amicus curia is a matter of privilege and may be granted where the party has no right to intervene. 4 Am. Jur. 2d, *Amicus Curia*, §§ 3 and 5. In this case, DIR did not formally petition to appear as an amicus curiae, and it has asked this court for affirmative relief, i.e., to stay the underlying malpractice action and to enjoin this interpleader

proceeding. DIR has asserted a direct interest in the settlement proceeds, so it is a claimant to the fund, and it is properly a party to the interpleader action.

The Virginia Long Arm Statute "speaks of transacting *any* business, it is a single-act statute requiring only one transaction in Virginia to confer jurisdiction on our courts." *Nan Ya Plastics Corp., supra* at 260 *quoting Kolbe, Inc. v. Chromodern, Inc.*, 211 Va. 736, 740, 180 S.E.2d 644 (1971). According to DIR, it has many insureds in Virginia, so obviously it has done business in Virginia. In the instant case, the Tennessee Receiver purposely availed himself of the privilege of invoking this Court's authority to enjoin or stay legal proceedings in this Court involving DIR's insureds, and it thereby sought to invoke the benefits and protections of this state's legal system. It does not offend traditional notions of fair play or due process to conclude that that single act was sufficient to confer jurisdiction in this state for other actions to which the Receiver may be joined as parties defendant which arose from that same transaction. Some courts which have analyzed similar cases where jurisdiction was based on a non-resident party's having filed litigation in the forum state involving the same transaction, have concluded that in personam jurisdiction in such cases may be based upon implied consent or waiver. *See, e.g. Adam v. Saenger*, 303 U.S. 59, 58 S.Ct. 454, 82 L.Ed. 649 (1938) (Texas corporation which filed suit in California voluntarily submitted itself to the jurisdiction of the California court for all purposes for which justice requires its presence); *General Contracting & Trade Co. v. Interpole, Inc.*, 940 F.2d 20 (1st Cir. 1991) (a party which elects to avail itself of the benefits of a state court's jurisdiction surrenders any objections to claims arising out of the same nucleus of operative facts); *Threlkeld v. Tucker*, 496 F.2d 1101 (9th Cir. 1974) (husband's prior use of California courts against his ex-wife subjected him to long arm jurisdiction in California to suit filed by wife fourteen months later); *Lyman Steel Corp. v. Ferrostaal Metals Corp.*, 747 F. Supp. 389 (N.D. Ohio 1990) (defendant's conduct in filing a related action in federal court in Ohio subjects it to personal jurisdiction in Ohio because the voluntary filing of a lawsuit is purposeful availment of that forum); *Foster Wheeler Energy Corp. v. Mateallgesellshaft*, 1993 U.S. Dist. Lexis 20450 (D. Del. 1993) (defendant subjected itself to personal jurisdiction in Delaware in a second suit by virtue of having previously filed its own suit in Delaware).

DIR, by its February 6, 2003, letter, directly sought affirmative relief from this court. Admittedly, the procedure was one of first impression for this Court because it has only conferred with other courts where expressly authorized by statute. *See, e.g.*, Virginia Code § 20-130 (Uniform Child

Custody Jurisdiction Act, simultaneous proceedings in other states).[1] This Court would not be surprised to find a similar provision in the Uniform Insurance Liquidation Act, but in this case, there is no provision for this exchange of information and issuance of a stay except by formal intervention as a party. It appears that the Receiver, by sending the February 6, 2003, letter, has submitted himself to the jurisdiction of this Court.

The Receiver argues that the "Defendant's Motion for Interpleader directly trespasses upon the injunction of lawsuits against the Receiver and DIR." (Receiver's Brief at 12.) That argument is based upon the portion of the DIR rehabilitation order that prohibits the initiation or continued prosecution of any legal proceedings against DIR itself or the Receiver. See, DIR Rehabilitation Order ¶ 2.

The statutory authority for the above injunction is found in Tennessee Code § 56-9-105(a) which permits an injunction against obtaining judgments against the insurer, its assets, or its policyholders. However, the same statute states that the Receiver may apply to any court outside of Tennessee for this relief. Tennessee Code Ann. § 56-9-105(b). Furthermore, the Receivership Order itself authorizes the Rehabilitator to apply outside of Tennessee for the above-described relief, as was done in this case. (DIR Rehabilitation Order ¶ 2.)

By the very terms of the Tennessee statute and the Receivership Order, the Order is effective only as to obtaining judgments against DIR or its insureds in Tennessee; otherwise, the language of Tennessee Code § 56-9-105(b), authorizing the receiver to petition courts outside of Tennessee for stays would be superfluous. The fact that the Receiver petitioned this Court for a stay is tacit acknowledgment that the Tennessee Order does not affect proceedings in this Commonwealth of Virginia. See, e.g., Clark v. Clark, 11 Va. App. 286, 295, 398 S.E.2d 82, 87 (a "jurisdiction may not extend the effect of its laws beyond its borders so as to prejudice another sovereign's rights or those of its citizens"). Accordingly, the Defendants' Motion for Interpleader, filed in a Virginia Circuit Court, does not violate the Tennessee Receivership Order.

---

[1] "B. If the court has reason to believe that proceedings may be pending in another state, it shall direct an inquiry to the clerk of the court or appropriate official of the other state.

"C. If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction, it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum. . . ."

The Receiver argues that Defendants' interpleader action should be stayed because this Court should give full faith and credit to the Tennessee Rehabilitation Order staying actions against DIR. In the alternative, the Receiver argues that the Court should extend comity to the Tennessee Order. While this action may be authorized in other jurisdictions, it is clearly not authorized under the law of the Commonwealth of Virginia under the facts presented here.

The seminal Virginia case on the issue of extending full faith and credit or comity under the facts presented here is *Eastern Indemnity Co. of Md. v. Hirschler, Fleischer, Weinberg, Cox & Allen*, 235 Va. 9, 366 S.E.2d 53 (1988). Under facts remarkably similar to those presented here, the Virginia Supreme Court did not enforce a foreign state's stay on litigation against an insurance company.[2] In the *Eastern Indemnity* case, the issue before the Supreme Court was whether the trial court erred in failing to accord full faith and credit or accord comity to orders of a Maryland court issued in a case filed by the Maryland Insurance Commissioner against Eastern Indemnity which, as in the Tennessee case, enjoined all persons from commencing or maintaining any action or obtaining any judgments against Eastern or its assets. A lawsuit was filed in the Circuit Court of the City of Richmond by a Virginia law firm seeking recovery against Eastern for legal services rendered. The Maryland Insurance Commissioner moved to dismiss or stay the Richmond action, asserting that the stay orders of the Maryland court should be accorded full faith and credit or given effect under principles of comity, but the Supreme Court rejected these arguments.

The *Eastern Indemnity* Court held that the Maryland court orders were not entitled to full faith and credit because the Virginia law firm was not a party to the Maryland proceeding. Therefore, the Maryland orders did not affect the law firm's action in Virginia. *Id.* at 13, 366 S.E.2d at 55. This is consistent with previous Virginia cases holding that a judgment rendered in one state is not entitled to full faith and credit in another state against a person who was not a party to the original proceeding. *See, Nero v. Ferris*, 222 Va. 807, 814, 284 S.E.2d 828, 832 (1981); *Bloodworth v. Ellis*, 221 Va. 18, 21,

---

[2] On page 10 of the Receiver's Brief, it cites the case of *Janak v. Allstate Ins. Co.*, 319 F. Supp. 215, 217-18 (W.D. Wis. 1970), for the proposition that an injunction issued for the protection of the receivership estate in state A is effective as to parties in state B, even if they do not have notice of it. The Receiver, however, fails to disclose that the *Janak* decision was expressly disapproved of by the Virginia Supreme Court in *Eastern Indemnity Co. of Md.*, 235 Va. at 13, n. 2, 366 S.E.2d at 55 ("We find this decision unpersuasive and decline to follow it.").

267 S.E.2d 96, 98 (1980). In the instant case, Defendants Caldwell and Voorhees were not parties to the Tennessee Receivership proceeding; therefore, the Tennessee Order has no effect on Caldwell and Voorhees, and it is not entitled to full faith and credit in this Interpleader proceeding.

The Supreme Court in *Eastern Indemnity* also rejected the argument that the Maryland Orders should have been given effect under principles of comity. The Court stated that:

> Comity is not a matter of obligation. It is a matter of favor or courtesy, based on justice and goodwill. It is permitted "from mutual interest and convenience, from a sense of the inconvenience which would otherwise result, and from moral necessity to do justice in order that justice may be done in return." Comity is not given effect when to do so would prejudice a State's own rights or the rights of its citizens.

*Eastern*, 235 Va. at 14, 366 S.E.2d at 55, citing *McFarland v. McFarland*, 179 Va. 418, 430, 19 S.E.2d 77, 83 (1942). Since extending comity to the Maryland stay would prejudice the rights of the Virginia plaintiff, the Supreme Court refused to apply the principle of judicial comity to the prejudice of its citizens. *Id.* at 15, 366 S.E.2d at 56. *See also*, *McFarland v. McFarland*, 179 Va. 418, 428-32 (1942) (comity not granted to foreign orders which may prejudice Virginia or its citizens' rights); *America Online, Inc. v. Anonymous Publicly Traded Company*, 261 Va. 350, 361, 542 S.E.2d 377, 383 (2001) (comity is not given effect when to do so would prejudice state's own rights or the rights of its citizens).

Applying the *Eastern Indemnity* rules, this Court will not extend comity to the Tennessee Order to the prejudice of the rights of Defendants Caldwell and Voorhees, who are Virginia citizens. To afford comity to the Tennessee Order staying all proceedings against DIR or the Receiver would deprive defendants of the ability to pursue their Motion for Interpleader and the requested relief that the Receiver honor the settlement check. It would deprive them, with little or no alternative, of the ability to enforce a settlement agreement made on their behalf by DIR, in litigation defended and heretofore controlled by DIR, before any Receivership Order was entered in Tennessee. It could even potentially expose the defendants to personal liability for payment of a settlement, negotiated at the direction of DIR, which was consummated with the understanding that DIR would pay the settlement amount.

The cases cited by the Receiver in support of its position are not controlling in this court and are rejected. *See, e.g. Motlow v. Southern Holding & Securities Corp.*, 95 F.2d 721 (8th Cir. 1938); *Bard v. Charles R. Myers Ins. Agency*, 839 S.W.2d 791 (Texas 1992); *Isermann v. MBL Life Assurance Corp.*, 231 Wis.2d 136, 605 N.W.2d 210 (1999). There are different streams of jurisprudence on this subject, but this court must apply the Virginia rule.

To maintain an action for interpleader, the petitioner need only assert a real and reasonable fear of exposure to double liability or the vexation of conflicting claims. *Fairfax County Supervisors v. Peterson*, 19 Va. Cir. 57, 59 (1989), citing *Bierman v. Marcus*, 246 F.2d 200, 202 (3d Cir. 1957), *cert. denied, Milmar Estate, Inc. v. Marcus*, 356 U.S. 933 (1958). The petitioner is not required to prove that potential claimants are entitled to the *res*; rivals prove their rights during the interpleader action. *Id.* Defendants Caldwell and Voorhees are entitled to relief under Virginia Code § 8.01-364 because they may be exposed to multiple liabilities through the existence of multiple claims to the same fund or the vexation of conflicting claims. Under the present facts, as detailed in paragraph 12 of Defendants' Motion for Interpleader, the parties, namely the Plaintiff, the Plaintiff's attorney, the Plaintiff's former attorney, and the Receiver, all claim that they are entitled to the settlement proceeds. This is the exact situation that the interpleader statute was designed to remedy, and as previously requested by Defendants, the parties in interest should all be required to prove their rights to the *res*.

The fact that the Receiver, on behalf of DIR, now does not want to honor the settlement agreement after it has already been partially performed is irrelevant. *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 385, 457 S.E.2d 36, 42 (1995) ("Once a competent party makes a settlement and acts affirmatively to enter into such settlement, her second thoughts at a later time upon the wisdom of the settlement do not constitute good cause for setting it aside.").

Other courts have enforced settlements made prior to an insurer's insolvency against the Receiver after entry of the insolvency order. See, *Kostick v. Janke*, 221 N.J. Super. 37, 533 A.2d 417 (1987) (funds which liability insurer deposited with the court prior to insolvency no longer qualified as assets of the insolvent's estate and the receiver had no authority to marshal them; funds ordered paid to the plaintiff); *Devane v. Kennedy*, 205 W. Va. 519, 519 S.E.2d 622 (1999) (court enforced pre-insolvency settlement agreement against guarantee fund after insolvency).

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. The Motion for Interpleader of the Defendants Caldwell and Voorhees is granted, and the January 24, 2003, settlement check shall be endorsed payable to Michael M. Foreman, Clerk, to be deposited and held by the Clerk of this Court pursuant to Virginia Code § 8.01-600 pending further proceedings in the interpleader action. The Clerk is directed to create a new law file for the interpleader action and to advise the parties of the new law number when he sends them a copy of this order;

2. Paula A. Flowers, Commissioner of Commerce and Insurance for the State of Tennessee, Alfred W. Gross, Deputy Receiver for ROA, Thomas P. Mains, Jack T. Burgess, and Melissa V. Jones are all interpleaded as potential claimants to the fund to be paid to the Clerk. Out of an abundance of caution, Counsel for Caldwell and Voorhees is directed to have a copy of this order served upon the Tennessee defendants;

3. Pursuant to Virginia Code § 8.01-364(C), the above named parties, who have been interpleaded, are enjoined from instituting and/or prosecuting any proceeding for the payment or allocation of the interpleaded funds in any court except this one;

4. Within twenty-one days of receipt of a copy of this order, the interpleaded parties shall file a answer to the Motion for Interpleader setting forth their claim to the funds held by the clerk.